ALBERT E. McKENZIE, as Trustee in Bankruptcy of GRAVES-QUINN CORPORATION, Appellant, v. IRVING TRUST COMPANY, Respondent.

Argued March 6, 1944; decided April 13, 1944.

*David Morgulas* for appellant. I. The preference took place on November 28, 1940, the date when the bank's records indicate the sum of $150,000 was withdrawn from the bankrupt's account. II. Until the respondent complied with section 3477 of the Revised Statutes of the United States, as amended October 9, 1940 (U. S. Code, tit. 31, § 203), the assignment in

suit was null and void. (*National Bank of Commerce* v. *Downie,* 218 U. S. 345; *Manhattan Commercial Co.* v. *Paul,* 216 N. Y. 481; *Levison* v. *Illinois Surety Co.,* 222 N. Y. 280; *Martin* v. *National Surety Co.,* 300 U. S. 588; *In re Meadow Sweet Farms, Inc.,* 32 Fed. Supp. 119; *Prairie State Bank* v. *United States,* 164 U. S. 227.) III. The assignment in question involving a contract and warrant of the United States, the Federal Statute with respect to assignments was applicable and not New York State decisions on the general law pertaining to assignments. (*Clearfield Trust Co.* v. *U. S.,* 318 U. S. 363; *Matter of National Fish Co.,* 6 Am. Bank. Reports [N. S.] 454.) IV. The assignment was not effective until at least December 2, 1940, within the meaning of section 60, subdivision a, of the Bankruptcy Act as amended in 1938. (*Corn Exchange Bank* v. *Klauder,* 318 U. S. 434; 3 Collier on Bankruptcy, 14th ed., § 60; *American Surety Co.* v. *Electric Co.,* 296 U. S. 133; *Jenkins* v. *National Surety Co.,* 277 U. S. 258; *Scarsdale Nat. B. & T. Co.* v. *U. S. F. & G. Co.,* 264 N. Y. 159; *Judson* v. *Corcoran,* 58 U. S. 612; *Matter of Cox,* 132 F. 2d 881.) V. On November 22, 1940, the bankrupt, having previously assigned to the surety company, had no power to make an assignment to the bank. (*Matter of Allied Products Co.,* 134 F. 2d 725; *Scarsdale Nat. B. & T. Co.* v. *U. S. F. & G. Co.,* 264 N. Y. 159.) VI. The mailing of the government check on November 27, 1940, was a delivery to the respondent for the purposes of depositing it in the bankrupt's account, and nothing more. (*Martin* v. *National Surety Co.,* 300 U. S. 588; *Singer* v. *Sirotta, Inc.,* 27 Fed. Supp 276; *Goodfellow* v. *Webber Lumber Supply Co., Inc.,* 257 Mass. 503; *Glennan* v. *Rochester Trust & S. D. Co.,* 209 N. Y. 12; *Hurley* v. *Union Trust Co.,* 244 App. Div. 590; *Attorney-Gen'l.* v. *Continental Life Ins. Co.,* 71 N. Y. 325.)

*William A. Onderdonk* and *Paul E. Mead* for respondent. I. Defendant had an assignment on November 22, 1940, of all moneys due and to become due from the government to the construction corporation under the War Department contract. (*Pickering* v. *Lomax,* 145 U. S. 310; *People* v. *Ryan,* 274 N. Y. 149; *Amiesite Constr. Corp.* v. *Luciano Contr. Co.,* 284 N. Y. 223.) II. From the delivery of the assignment on November 22, 1940, no purchaser from the corporation, and no creditor

could acquire a superior right to the moneys assigned. (*Corn Exchange Bank* v. *Klauder,* 318 U. S. 434; *Goldstein* v. *Rusch,* 56 F. 2d 10; *Hanna* v. *Lichtenhein,* 182 App. Div. 94; *Williams et al.* v. *Ingersoll et al.,* 89 N. Y. 508; *Central Trust Co.* v. *West India Imp. Co.,* 169 N. Y. 314; *Goodyear Tire & Rubber Co.* v. *Bagg,* 292 Mass. 125; *Superior Brassiere Co., Inc.,* v. *Zimetbaum,* 214 App. Div. 525; *Salem Co.* v. *Manufacturers' Co.,* 264 U. S. 182; *Erie R. Co.* v. *Tompkins,* 304 U. S. 64; *Rockmore* v. *Lehman,* 129 F. 2d 892.) III. The delay in obtaining the consent and in the filing only operated to impair the recourse of defendant to the government. (*Young* v. *Upson,* 115 F. 192; *Williams et al.* v. *Ingersoll et al.,* 89 N. Y. 508; *Salem Co.* v. *Manufacturers' Co.,* 264 U. S. 182; *Benedict* v. *Ratner,* 268 U. S. 353; *Portuguese-American Bank* v. *Welles,* 242 U. S. 7; *State Bank* v. *Central Mercantile Bank,* 248 N. Y. 428; *Fortunato* v. *Patten,* 147 N. Y. 277; *Martin* v. *National Surety Co.,* 300 U. S. 588; *Mutual Trust Co.* v. *Merchants Nat. Bank,* 236 N. Y. 478; *Irving Trust Co.* v. *Leff,* 253 N. Y. 359; *Whiting* v. *Hudson Trust Co.,* 234 N. Y. 394.) IV. Regardless of the import of the consent and of the filing, the assignment was at least effective as to the government check for $155,865.50 out of which the $150,000 debt of the corporation was discharged on November 28, 1940. Apart from the Assignment of Claims Act of 1940 defendant had a valid common law assignment which attached to the government check upon its delivery to the corporation on November 27, 1940. (*National Bank of Commerce* v. *Downie,* 218 U. S. 345; *Martin* v. *National Surety Co.,* 300 U. S. 588; *Blake* v. *Weiden,* 291 N. Y. 134; *Amiesite Constr. Corp.* v. *Luciano Contr. Co.,* 284 N. Y. 223; *Matter of Leterman, Becher & Co.,* 260 F. 543; *Clark* v. *Iselin,* 21 Wall. 360; *Fairbanks* v. *Sargent,* 117 N. Y. 320; *Central Trust Co.* v. *West India Imp. Co.,* 169 N. Y. 314; *Freund et al.* v. *Importers & Traders' Nat. Bank,* 76 N. Y. 352.) V. Assuming no assignment whatever, plaintiff cannot recover. The government check for $155,865.50 was delivered to defendant on November 27, 1940, and against this sum, treated as a routine deposit, defendant had a right of setoff which is beyond the reach of plaintiff. (*Merrimack Nat. Bank* v. *Bailey,* 289 F. 468; *Elliotte* v. *American Sav. Bank &*

*Trust Co.,* 18 F. 2d 460; *Studley* v. *Boylston Bank,* 229 U. S. 523; *Kolkman* v. *Manufacturers' Trust Co.,* 27 F. 2d 659; *Chapman* v. *Mills & Gibb,* 241 F. 715; *People* v. *Continental Casualty Co.,* 157 Misc. 15; *Bainbridge* v. *Hoes,* 163 App. Div. 870.)

LEHMAN, Ch. J. On March 28, 1941, a petition in bankruptcy was filed against Graves-Quinn Corporation and thereafter the corporation was duly adjudicated a bankrupt. On November 28, 1940, the defendant bank had received from the bankrupt its check for $150,000. The check had been mailed from Boston on November 27th. The deposit account of the bankrupt with the defendant bank was at that time overdrawn. It had borrowed large sums of money from the bank and had executed and delivered to the bank three promissory notes aggregating the sum of $150,000. On November 27, 1940, the bankrupt received a check for $155,865.50 from the United States Government in payment of construction work which the bankrupt was performing under a contract with the War Department. On the same evening the bankrupt mailed that check to the bank for deposit in the bankrupt's account, and also mailed to the bank a second check in the sum of $150,000 drawn on its deposit account to the order of the bank. The bank received the checks on November 28th and used the bankrupt's check for $150,000 to pay and discharge the three promissory notes of the bankrupt, executed by the bankrupt when it borrowed that amount from the bank. After the adjudication in bankruptcy the trustee brought an action for the restitution of the moneys of the bankrupt which the bank had applied on November 28, 1940, to the payment of that indebtedness.

The first cause of action in the complaint alleges that such transfer of its moneys by the bankrupt in payment of an antecedent indebtedness operated as a preference which is unlawful under the provisions of the Bankruptcy Act (U. S. Code, tit. 11). The second cause of action alleges that the transfer was void because in violation of section 15 of the Stock Corporation Law of the State of New York. In its answer the defendant, in addition to denials of material allegations of the complaint, pleaded certain affirmative defenses to each cause of action and then moved pursuant to rule 113 of the Rules of Civil Practice for summary judgment dismiss-

ing the first cause of action on the ground that " the defenses thereto are sufficient as matter of law and founded upon facts established by documentary evidence or official record ". The Appellate Division unanimously reversed an order of Special Term denying the motion and granted the motion to dismiss the first cause of action alleged in the complaint. An order of severance and a judgment dismissing the first cause of action was entered. Upon this appeal we are concerned only with that cause of action.

The alleged unlawful transfer on November 28th was made, it is said, exactly four months prior to the date of the petition in bankruptcy. Payment of an antecedent debt by a transfer of moneys, at that time belonging to the bankrupt, upon which the creditor had no lien and in which it had no special property would, it is plain, constitute an unlawful preference which could be set aside upon the suit of the trustee if the creditor at that time knew that the debtor was insolvent. That would not be true, however, if the payment of the antecedent debt was made from property of the debtor which had been transferred to the creditor at any time prior to November 28th, and the defendant has pleaded in its affirmative defenses and, upon the motion for summary judgment has established, facts which, it is contended, show a prior assignment by the debtor of the moneys which might thereafter be paid by the government for work performed under the construction contract of the defendant and which show, also, that on and after November 27th, if not before, the " defendant had a lien and right of offset against the deposit balance of Graves-Quinn Corporation to the amount of $150,000." The Bankruptcy Act, which in section 60 provides that a preferential transfer of property by an insolvent debtor in payment of an antecedent debt shall be void, if made within four months of the filing of a petition in bankruptcy, by an amendment adopted in 1938 also formulates in section 60 (subd. a) the test which must be applied in determining the date when a transfer is complete. " A transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the

property so transferred superior to the rights of the transferee therein, and, if such transfer is not so perfected prior to the filing of the petition in bankruptcy   *   *   *   it shall be deemed to have been made immediately before bankruptcy.'' We apply that test here. The problem presented upon this appeal is whether a transfer so perfected that it can withstand that test was made on or before November 27th.

The facts which may be relevant to that problem are not disputed. In September, 1940, Graves-Quinn Corporation, the bankrupt, entered into a contract with the War Department for the construction of military housing at several places in New England, for a stipulated consideration of approximately $1,000,000. In accordance with the terms of the contract, Standard Accident Insurance Company executed and delivered bonds for the performance of its contract by the bankrupt and for the payment by the bankrupt for labor and materials furnished to it. The bankrupt, in October and November, 1940, became indebted to the defendant for moneys which it borrowed from the defendant and for overdrafts made by the bankrupt upon its bank account. In accordance with an understanding or agreement it had with the defendant, the bankrupt from time to time applied upon this indebtedness moneys which were paid to the bankrupt by the government. On November 22, 1940, the bankrupt upon the demand of the defendant, delivered to it an assignment of '' any and all sums of money now due or to become due '' under its contract with the War Department.

In September, 1940, when the contract was made, assignments of moneys due or to become due from the United States under contracts with the government, were expressly prohibited by statute: '' All transfers and assignments made of any claim upon the United States   *   *   *   and all powers of attorney, orders, or other authorities for receiving payment of any such claim,   *   *   *   shall be absolutely null and void, unless they are freely made   *   *   *   after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof.   *   *   *'' United States Code, title 31, Money and Finance, section 203 (Revised Statutes, 3477). The assignment delivered by the bankrupt on November 22, 1940, would undoubtedly have been '' absolutely null and

void " if the statute had not been amended on October 9, 1940, for the express purpose of authorizing, subject to conditions therein specified, the assignment of claims against the United States arising even under contracts theretofore made with the government (Public Law No. 811 of the 76th Congress; 54 Stat., ch. 779, p. 1029). The statute as amended provides that:

" The provisions of the preceding paragraph shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution, including any Federal lending Agency: PROVIDED,

" 1. That in the case of any contract entered into prior to the date of approval of the Assignment of Claims Act of 1940, no claim shall be assigned without the consent of the head of the department or agency concerned;

" 2.          *     *     *     *     *     *     *

" 3.          *     *     *     *     *   . *     *

" 4. That in the event of any such assignment, the assignee thereof shall file written notice of the assignment together with a true copy of the instrument of assignment with —

" (a) the General Accounting Office,

" (b) the contracting officer or the head of his department or agency,

" (c) the surety or sureties upon the bond or bonds, if any, in connection with such contract, and

" (d) the disbursing officer, if any, designated in such contract to make payment.

" Notwithstanding any law to the contrary governing the validity of assignments, any assignment pursuant to the Assignment of Claims Act of 1940 shall constitute a valid assignment for all purposes."

The defendant bank did not request or receive the " consent of the head of the department or agency concerned " to the assignment executed on November 22nd until after November 28th, when it had obtained from the bankrupt and applied to the payment of the antecedent debts of the bankrupt, the proceeds of the check which the bankrupt had received from the United States; nor did it until after that time file written notice of

the assignment as required in subdivision 4 of the amended statutes. It enclosed the assignment in a letter addressed to the Quartermaster General in Washington, dated November 27, 1940, in which for the first time it " requested the approval of the Head of the Department concerned " and stated that it " should appreciate your cooperation in obtaining this approval." Accordingly on December 4th the assignment was transmitted by the office of the Quartermaster General to the Assistant Secretary of War with a memorandum stating among other things: " 2. It is the opinion of this office that the attached assignment has been executed pursuant to and in accordance with the Assignment of Claims Act of 1940 and, therefore, constitutes a valid assignment. 3. It is recommended that the attached assignment be approved by you in accordance with the provisions of subdivision 1 of the Assignment of Claims Act of 1940." The following day, December 5, 1940, the Secretary of War formally approved the assignment. In the meanwhile on December 2, 1940, the defendant had sent written notices of the assignment to the surety company and the other persons with whom such written notices must be filed in accordance with subdivision 4 of the amended statute. Thus it appears undisputed that on December 5th there was full compliance with every condition provided by the statute in connection with the assignment of claims against the United States; but since such compliance was completed within four months of the filing of the petition of bankruptcy the question arises whether the assignment constitutes a transfer which was " perfected " within the meaning of the Bankruptcy Act when executed or only when there was compliance with all the conditions provided in the Assignment of Claims Act.

The right to assign a debt or claim arising under a contract with the United States may be granted or withheld by Congress and the power of Congress to attach such conditions as it sees fit to the grant of a right to assign is not open to serious challenge. Here it has granted a right to assign; there has been compliance with the statutory conditions and the United States does not challenge the validity of the assignment. We are told that Congress attached conditions to the right to assign a claim against the United States primarily for the protection of the government and that it " was not inoperative because of the

delay either in obtaining the consent of the Secretary of War thereto or in the filing of the assignment with the various government departments '' (266 App. Div. 599, 601) citing *Amiesite Constr. Corp.* v. *Luciano Contr. Co.* (284 N. Y. 223); *Salem Co.* v. *Manufacturers' Co.* (264 U. S. 182).

Congress, by its amendment to the Assignment of Claims Act, sanctioned the assignment of claims against the United States subject to the specified conditions for the purpose of enabling contractors to borrow money for the performance of the work upon the assurance that moneys received in payment for the work would be used to satisfy the debt. That appears plain upon the face of the statute and is confirmed by the debate in Congress. It is not so plain that the conditions that the consent of the head of the department be obtained and that the assignment be filed in government offices were attached to the right to assign solely for the protection of the government. The debates in Congress suggest additional reasons. The Chairman of the Judiciary Committee of the House of Representatives explained: '' If this bill is not enacted there can be no assignment of claims. That is the first proposition. The agencies of the Government which have responsibility are themselves responsible for proposing this legislation. They came down to the Committee on the Judiciary, * * * and indicated their desire to increase as far as possible the number of persons who could bid on these contracts, and who could help the Government in this emergency. They said, however, with reference particularly to some of the equipment material, with regard to which secrecy had to be preserved, that they did not want to take the responsibility of advising that in every case these claims should be assignable, or that there would not be in the nature of things some claims that should not be assigned.'' (Congressional Record, vol. 86, Part ii, p. 12557.)

We think that consent was required by Congress, not only for the protection of the government but also for the protection of the public from harm which might arise from assignment of some contracts with the War Department, the Navy Department or other departments of the government. To afford such protection in the fullest measure, we think that Congress may well have intended that an assignment of a claim for moneys due or to become due under a contract with the United States

should be absolutely void *unless* consent was given, and should be " inoperative " *until* such consent was given. The question is now posed whether compliance with the statutory conditions, required to give force to the inchoate assignment of a claim, has retroactive effect for any purpose, or whether even after the assignment has become fully valid and enforcible it may be given effect only as if executed at the time when all statutory conditions were fulfilled. That is a question which depends solely upon the construction of a statute of Congress, and we are told that the question has not yet been considered or decided by any Federal court.

Congress, in attaching conditions to the contractor's right to assign claims against the United States, had, it is plain, no intention to dictate to the contractor what he should do with the moneys received upon his contract. (*Hobbs* v. *McLean,* 117 U. S. 567.) After the contractor has fully complied with the conditions attached to his right to assign, the purpose of imposing any limitation upon the contractor's freedom to assign claims is fulfilled, and the government and the public have received the intended protection and have no interest in any controversy between successive assignees of the fund or claim or between persons asserting conflicting liens at law or in equity in the fund. It has been held that even where the statute provides that a transfer or assignment of a claim against the United States " shall be absolutely null and void " unless executed with prescribed formalities after " the issuing of a warrant for the payment thereof ", an assignment which is for that reason " void " may still give rise to equities, and after the moneys are " in the hands of the contractor or subsequent payees with notice, assignments may be heeded, at all events in equity, if they will not frustrate the ends to which the prohibition was directed." (*Martin* v. *National Surety Co.,* 300 U. S. 588, 596.) Though the analogies may not be complete, what was said and decided in that case may guide us in seeking the intent of the statute enacted after that case was decided.

Here the statute does not in express terms declare that an assignment is wholly void until the assignment has been filed and consent has been given. On the contrary, under the statute the assignment is permitted, *provided* that there is compliance with these conditions. Not only have the government and the

public no interest in refusing all retroactive effect to such compliance, but the purpose of the government in sanctioning assignments to financial institutions, subject to specified conditions, might be thwarted in part if a lender who receives an executed assignment as security for a loan did not have the assurance that it thereby acquired an inchoate interest in the fund which would become enforcible when he complied with the statutory conditions. A consent which gives validity to an assignment previously executed, like the ratification of a contract made without prior authorization, cannot wipe out property rights acquired by third parties in the interval between the execution of the assignment and the consent without which it lacks validity. We think that at least as between the parties to the assignment, the assignment, however, effects an inchoate transfer of the assigned rights or property even though there must thereafter be compliance with statutory conditions before the assignment becomes enforcible.

That brings us to the question whether prior to November 28, 1940, the assignment of the moneys due or to become due under the contract was " perfected " within the meaning of section 60, subdivision (a) of the Bankruptcy Act [U. S. Code, tit. 11, § 96, subd. (a)], even though consent was not given until later. The test under the statute as amended in 1938 is, as I have said, whether no " bona fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein ". The " standards which applicable state law would enforce against a good-faith purchaser " or against a creditor must be applied here. (Corn Exchange Bank v. Klauder, 318 U. S. 434.)

The test of what constitutes a perfected transfer formulated in section 60, subdivision a, is not the test previously applied. It is " more comprehensive and accords with the contemplated purpose of striking down secret liens. * * * " (House Reports, No. 1409, 75th Congress, First Session, p. 30. See Corn Exchange Bank v. Klauder, supra.) The appellant, however, fails to point out any rule of law whereby a bona fide purchaser for value or a creditor could have any rights in the moneys which might become due under the contract before they were paid to the contractor or its assignee, except perhaps

a lienor under the provisions of the Lien Law of this State. It is unnecessary to decide whether the word " creditor " in the Bankruptcy Act was intended to include a lienor who complied with the statute, or whether a purchaser for value or a creditor could have obtained any rights in the moneys until they were paid to the contractor and the check mailed to the defendant on November 27th. It seems clear that at least from that time the transfer was perfected.

Certainly when the contractor received payment by check from the government on November 27th it was in good faith bound to deliver the check or its proceeds to the defendant in accordance with its agreement as evidenced by the executed assignment. The contractor had received a direction from the bank that the check should be mailed to it, and from the time that the check was deposited in the mail in accordance with that request, delivery of the moneys to the assignee was complete. The book entries of the bank on November 28th by which the check received by the contractor from the government was deposited in the account of the contractor and the check of the contractor to the order of the bank in payment of indebtedness to the bank, merely constituted a record of the transaction in compliance with the directions of the contractor.

The appellant maintains, finally, that if an assignment of claims against the United States may be given effect without compliance with the statutory conditions, the surety company had received a prior assignment of the same moneys and therefore had rights superior to the rights of the defendant as subsequent assignee. Many objections are pointed out by the respondent to that contention of the plaintiff-appellant. We do not consider these objections, for the action is not brought by the plaintiff as trustee to establish that the surety company has a title superior to the title of the bank. The action is brought solely to set aside the transfer to the bank as an unlawful preference. The trustee in bankruptcy has no authority to bring an action to establish a superior title in some other person.

The judgment should be affirmed, with costs.

LOUGHRAN, RIPPEY, LEWIS, CONWAY, DESMOND and THACHER, JJ., concur.

Judgment affirmed.