**In re Donovan W. KENNEDY and Julie A. Kennedy, Debtors.**

**Bankruptcy No. 93–30091–13.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Nov. 3, 1993.

Gordon Barry, Toledo, OH, for debtors.

James Detling, Thomas Zaremba, Toledo, OH, for Union Bank.

Anthony Disalle, Trustee, Toledo, OH.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon Debtor's Objection to Proof of Claim, filed by Union Bank of California (hereafter "Union Bank"). A Hearing was convened on Debtor's Objection and Counsel agreed to submit written arguments. Both parties submitted Briefs in support of their position. After the Hearing, Counsel agreed to submit Post–Trial Memorandum in lieu of closing arguments. Creditor's Counsel complied with this request. Debtor's Counsel, after being granted a request to extend time, never filed a Post–Petition Memorandum. The Court has reviewed the written arguments of Counsel, supporting affidavits, and exhibits, as well as the entire record of the case. Based upon that review and for the following reasons, the Debtor's Objection to Proof of Claim should be Overruled.

### FACTS

Donovan and Julie Kennedy (hereafter "Debtors"), on September 11, 1991, entered into a Pre–Computed Interest Motor Vehicle Contract and Security Agreement (hereafter "Contract") with Cardinale Oldsmobile GMC in California. This Contract provided for the financing of a 1991 Mitsubishi Eclipse. Payments were to be paid on the twenty-sixth (26th) of each month until September 26, 1996. The contract also provided that the Debtors were prohibited from removing the

vehicle from California for more than thirty (30) days at a time.

This Contract was assigned without recourse to Union Bank. Union Bank received a security interest in the vehicle which was, according to the record, perfected under the laws of California.

In February of 1992, after Donovan Kennedy's discharge from the army, the Debtors moved to Ohio. They did not notify the Creditors that they had moved until they were in Ohio. The Creditors then commenced to send all correspondences to the Debtors at their address in Ohio.

About the same time the Debtors moved they started to become delinquent in their payments. Although they never completely missed a month they were late in paying several times. In addition, in August of 1992, the Debtors arranged with Union Bank to have that month's payment deferred. The Debtors missed their September 26, 1992 payment and have not since made a payment.

On September 10, 1992 Donovan Kennedy went to the Wood County Title Department (hereafter "Title Department") to begin proceedings to retitle the car in Ohio. The Title Department on the aforementioned date, sent a request to Union Bank asking for the original title and a certified copy of the Security Agreement. When the Title Department received no response from Union Bank, they sent another letter on October 5, 1992 and again received no response.

The Debtors called Union Bank to discover the reason why the bank was withholding the title. The Debtors were informed that Union Bank would not allow the Debtors to retitle the vehicle in Ohio because of their payment history. Since the car could not be driven without valid Ohio license plates, which cannot be obtained without an Ohio title, Debtors offered to surrender the vehicle. Union Bank agreed and on October 26, 1992 Debtors returned the vehicle to Toledo Auto Auction, a location designated by Union Bank. Union Bank then sold the vehicle and now claim a deficiency of Five Thousand Seven Hundred and Eighty-six Dollars and Eighty-two Cents ($5,786.82).

The procedure of this case is as follows: the Debtors filed their Chapter 13 Bankruptcy Petition on January 13, 1993. Union Bank then filed its Proof of Claim on February 8, 1993 with an Objection to the Claim being filed by the Debtors on March 10, 1993. A Hearing was held on the Debtors' Objection and Union Bank subsequently filed Closing Arguments and Post–Trial Memorandum. Debtors' Counsel never filed a Closing Arguments or Post–Trial Memorandum.

## *LAW*

The relevant portions of the Bankruptcy Code are as follows:

**11 U.S.C. § 501(a):**

A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.

**11 U.S.C. § 502**

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) ... the court, after notice and a hearing shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

The relevant portions of the California Uniform Commercial Code are as follows:

**Cal.Com.Code § 9502(2)**

A secured party who by agreement is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor and who undertakes to collect from the account debtors or obligors must proceed in a commercially reasonable manner and may deduct his reasonable expenses of realization from the collections. If the security agreement secures an indebtedness, the secured party must account to the debtor for any surplus,

and unless otherwise agreed, the debtor is liable for any deficiency.

## DISCUSSION

Allowance or disallowance of claims against the estate is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). The case at bar is a core proceeding.

This case arose out of a security agreement devised under the California Uniform Commercial Code. Referral to California law occurs throughout the Security Agreement, by implication then, California law should govern. "In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." *Barnhill v. Johnson*, 503 U.S. ——, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), citing *McKenzie v. Irving Trust Co.*, 323 U.S. 365 at 370, 65 S.Ct. 405 at 408, 89 L.Ed. 305 (1945).

Pursuant to Cal.Com.Code § 9502 after a debtor has defaulted, the secured party has the right to repossess the collateral and sell it in a commercially reasonable manner. If there is any surplus amount between the selling price and the debt, then the secured party must pay the difference to the debtor. Contra, if there is a deficiency, the debtor is liable to the secured party for the difference between the debt and the selling price.

The major issue in this case is whether the Debtors were in default when they voluntarily surrendered the vehicle. If so, they are liable for the deficiency to Union Bank. It is the Court's belief that the Debtors were in default at the time of surrender.

■ Counsel for both parties have focused the issue on the removal of the vehicle from California for more than thirty (30) days. Union Bank contends that the Debtors' moving, in February, to Ohio, was when the actual default happened. Union Bank contends that Debtors were in default on an obligation in the Contract not to remove the vehicle from California or, at the very least, to reasonably notify Union Bank before the vehicle was removed from the state. Since the Debtors did neither, they are in default.

The Debtors contend that although they removed the car without telling Union Bank first, they did inform Union Bank shortly thereafter. Union Bank made no objection to the move. The Debtors contend that since Union Bank made no objection they were not in default and as such the ability to retitle the vehicle should not be unreasonably withheld.

The Court is inclined to agree with the Debtors' position that they were not in default by reason of removing the vehicle from California, but for a different reason. The Court believes that essentially there was a modification of the Contract. This modification arose by the inaction of Union Bank in so opposing the move. Union Bank made no objection and, in fact, began dealing on a regular basis with the Debtor in Ohio. This action, on the part of Union Bank, when looking at all pertinent facts, amounted to a change in the Contract. This change enabled the Debtor to remove the vehicle for more than thirty (30) days from the state of California without being in default. This modification does not, however, force Union Bank to allow retitling of the vehicle in Ohio.

■ The issue now turns on whether the Debtors were in default on their payments. It is the Court's belief that they were. According to the Contract, payments were to be made on the twenty-sixth (26th) of each month. The Debtors, since February 1992, had been late paying four (4) times; had bounced one (1) check; and had deferred payment of one (1) monthly installment. In addition the Debtors stopped paying their loan completely in September, 1992.

■ Failure on the part of Union Bank to allow retitling of the vehicle is not listed in the Security Agreement as a ground for default. However, according to the Security Agreement, nonpayment is grounds for default. Default by the Debtor gives Union Bank the right to accelerate the debt and repossess the vehicle. Surrendering of the vehicle is the equivalent of repossession. *American Business Credit Corp. v. Kirby*, 122 Cal.App.3d 217, 175 Cal.Rptr. 720, 722 (1981). Thus Union Bank has the right to sell the collateral in satisfaction of the debt and make the debtor liable for any deficiency.

It is the Debtors' contention that Union Bank was in error because they unreasonably withheld title, rendering the vehicle unusable. This action on the part of Union Bank, contends the Debtors, justified the Debtors' failure to pay their monthly installment. As stated previously, nowhere in the Security Agreement is failure on the part of Union Bank to allow the Debtor to retitle the vehicle in another state listed as being a means of default. Counsel for the Debtor has argued that it is widely understood that Union Bank should not unreasonably withhold title; however, Counsel has offered no evidence to support this belief. Even if it were an understood premise that Union Bank should not unreasonably withhold title, Union Bank, in this case, does not seem to be acting unreasonably. When the Debtors asked to retitle the vehicle they had become very erratic in paying their monthly payments. It does not seem, taking in to account the Debtors' payment history, that it is unreasonable to withhold title. In addition, if the Court were to allow the Debtors' contention, this would set the precedent that a debtor could withhold payment anytime he or she did not agree with a bank's actions. This is not a precedent the Court will set.

The responsibility to pay monthly installments did not terminate when the Debtors could not obtain proper title. Thus, the Debtors' inability to retitle the vehicle does not release the Debtors from their responsibility to make payments. When the vehicle was surrendered, the Debtors had not paid Union Bank for, at least, the month of September, 1992. Based on this non-payment and the Debtors' past payment history, Union Bank was well within their rights to accelerate the lease; to take possession of the vehicle; and to sell it in satisfaction of the debt. As such, the Debtors are liable for the deficiency under Cal.Com.Code § 9502. Therefore the Debtor's Objection to Proof of Claim should be Overruled.

In reaching the conclusion found herein, the Court has considered the demeanor of the witnesses, all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

*Accordingly, it is*

**ORDERED** that Debtors' Objection to Proof of Claim be, and is hereby **DENIED.**

It is **FURTHER ORDERED** that the Claim of Union Bank be **ALLOWED** in the amount of Five Thousand Eight Hundred and Seven Dollars and Forty-seven Cents ($5,807.47).