In re Charles Atwood FLANAGAN, Debtor.

Bonnie C. Mangan, Trustee, Plaintiff,

v.

Hong Kong Shanghai Banking Corporation, Defendant.

Bankruptcy No. 99–30565.
Adversary No. 00–3061.

United States Bankruptcy Court, D. Connecticut.

Aug. 5, 2003.

Douglas S. Skalka, Neubert, Pepe, & Monteith, New Haven, CT, for Plaintiff.

Thomas J. Farrell, Hunt Leibert Chester & Jacobson, P.C., Hartford, CT, for Defendant.

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

ALBERT S. DABROWSKI, Chief Judge.

## I. INTRODUCTION

This adversary proceeding seeks to avoid and recover alleged preferential transfers made to the Defendant pursuant to a wage garnishment. The Defendant's pending summary judgment motion asserts that the subject transfers are not preferential under Bankruptcy Code Section 547 because (i) as a matter of law a "transfer" of a debtor's interest in his wages occurs only at a time 20 days after service of a wage execution upon his employer, and (ii) such date in this case transpired more than 90 days prior to the Debtor's bankruptcy petition.

As detailed herein, the Court agrees with the position of the Defendant. Consequently, the instant Motion for Summary Judgment will be GRANTED.

## II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A), (F).

## III. PROCEDURAL BACKGROUND

1. On February 17, 1999 (hereafter, the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. By Complaint dated April 3, 2000, the Debtor commenced this adversary proceeding to avoid and recover, under Bankruptcy Code Sections 547(b) and 550, payments made within the 90 days prior to the Petition Date to the Defendant from the Debtor's employer pursuant to a garnishment of the Debtor's wages.

3. The Defendant answered the Complaint, and thereafter filed the instant Motion for Summary Judgment.

4. Coincident with the January 16, 2003 conversion of the Debtor's bankruptcy case from Chapter 11 to Chapter 7, Bonnie C. Mangan was appointed trustee of the Debtor's bankruptcy estate. Ms. Mangan was thereafter substituted as Plaintiff herein as the real party in interest in her capacity as estate trustee.

## IV. FACTS NOT IN GENUINE ISSUE

The following facts are not in genuine issue—

1. On September 15, 1994, the Defendant's predecessor (hereafter, the "Bank"), obtained a deficiency judgment in the Connecticut Superior Court (hereafter, "Superior Court") against Charles Atwood Flanagan (heretofore and hereafter, "Debtor") in the amount of $124,225.26.

2. On October 24, 1994, the Superior Court issued a wage execution in favor of the Bank against the Debtor pursuant to Section 52–361a of the Connecticut General Statutes (hereafter, "Wage Execution").

3. At all relevant times the Debtor was employed by Thompson & Peck, an insurance agency in which he was an equity security holder. On November 14, 1994,

the Wage Execution was served upon Thompson & Peck, which thereafter complied with its duties as a garnishee under C.G.S. § 52–361a.

4. Garnishment pursuant to the Wage Execution of compensation earned by the Debtor at Thompson & Peck resulted in certain monetary transfers to or on behalf of the Defendant in the 90 days preceding the Petition Date (hereafter, the "Payments").

5. The Payments enable the Defendant to receive more than it would receive if the Payments had not been made and it received payment on its debt to the extent provided by the provisions of the Bankruptcy Code applicable to this Chapter 7 case.

6. At all times relevant to this proceeding the Debtor was "insolvent" within the meaning of 11 U.S.C. § 101(32) (1999).

## V. DISCUSSION

Federal Rule of Civil Procedure 56(c), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, directs that summary judgment should enter when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In the present matter, the heart of the dispute between the parties does not relate to the operative facts. Indeed, this Court determines that there are no facts in genuine issue which are material to a determination of this proceeding. Thus, the decisive question before the Court at this time is whether the Defendant is entitled to judgment as a matter of law. That legal issue is focused narrowly on the question of whether the Payments constituted "transfer[s] of an interest of the debtor in property" within the meaning of Section 547(b) of the Bankruptcy Code.[1]

Not surprisingly, the Defendant directs this Court's attention to, *inter alia, In re Riddervold,* 647 F.2d 342 (2d Cir.1981), as arguably controlling precedent on the question of the recovery of wage execution payments as preferential transfers. In *Riddervold,* a panel of the Second Circuit Court of Appeals construed New York wage execution law to conclude that no transfer of an interest of the debtor occurs when the debtor's employer makes a garnishment payment to a levying officer on behalf of a garnishing creditor pursuant to the direction of a previously served wage execution. The Circuit Court explained that under New York law service of a wage execution upon the debtor's employer "works a novation" whereby the percentage of the debtor-employee's compensation entitled to be garnished is thereafter owed by the employer "not to the employee but to the sheriff for the

---

1. Bankruptcy Code Section 547(b) provides in relevant part as follows:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

... on or within 90 days before the date of the filing of the petition ...; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title....

11 U.S.C. § 547(b) (1999).

benefit of the judgment creditor." *Id.* at 346.

Therefore, to the extent that Connecticut wage execution law is congruent with the New York law construed in *Riddervold,* that decision would appear to be authoritative in cases such as that at bar. Nonetheless, several bankruptcy courts have recently revisited *Riddervold's* authority in light of *Barnhill v. Johnson,* 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). *E.g., In re Arway,* 227 B.R. 216 (Bankr.W.D.N.Y.1998). In *Arway* the bankruptcy court gleaned from *Barnhill* a *federal law* rule that wage garnishment transfers of debtor property occur at the time(s) the employer honors the garnishment through payment for the benefit of the creditor, not at the earlier point at which service of the wage execution upon the employer is deemed complete.

For the reasons which follow, this Court declines to follow the lead of *Arway;* concluding instead that the holding of *Riddervold* remains persuasive and authoritative.

### A. *Barnhill's* Impact.

*Arway* premised its departure from *Riddervold* on a perceived clarification of applicable law made by the United States Supreme Court in *Barnhill. Arway* read the following language in *Barnhill* effectively to overrule *Riddervold's* focus on state law in determining whether wage garnishment payments are "transfer[s] of an interest of the debtor in property"—

"What constitutes a transfer and when it is complete" is a matter of federal law. *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 369–370, 65 S.Ct. 405, 89 L.Ed.

305... (1945). This is unsurprising since... the statute itself provides a definition of "transfer." But that definition in turn includes references to parting with "property" and "interest in property." In the absence of any controlling federal law, "property" and "interests in property" are creatures of state law. *Id.,* at 370, 65 S.Ct. 405; *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136... (1979). 503 U.S. at 397–98, 112 S.Ct. 1386.[2]

With due respect to the *Arway* court, this Court does not read *Barnhill* to have any material implications for the *Riddervold* analysis. It is important to note that in the quoted excerpt from *Barnhill,* Chief Justice Rehnquist cites directly to the United States Supreme Court's decisions in *McKenzie* and *Butner* for the proper division of analysis between state and federal law. Because *McKenzie* and *Butner* both predate *Riddervold*—as do the subject Bankruptcy Code provisions, *i.e.* Sections 101(54) and 547(e)—the *Riddervold* Court must be presumed to have known and applied the appropriate source of law for its analysis. *Barnhill* simply broke no new ground with respect to the presently contested issues.

*Riddervold* appropriately looked to state law as the source for resolution of the disputed issue before it. The fact that federal law defines "transfer"[3] only leads to the conclusion that the Payments here were "transfers" from one entity to another, it does nothing to help answer the question of *what* and/or *whose* property interests were being transferred via the Payments. This latter question—going to

2. *Barnhill* decided an issue different from the one presently at bar. It answered the question of when a transfer of payment by a check occurs—upon delivery or, subsequently, upon clearing the maker's depository institution.

3. 11 U.S.C. § 101(54) defines transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property...."

the nature of the property interest transferred—is appropriately determined by state law.

In addition, the fact that federal law governs the *timing* of a given transfer does not inform the issue at bar. For instance, exclusive reference to Section 547(e)(3)'s declaration that a preferential transfer "is not made until the debtor has acquired rights in the property transferred" puts the proverbial "cart before the horse" since the question which must be asked first is, as it was in *Riddervold,* whether the debtor *ever had any rights* in the funds transferred from the employer to, or for the benefit of, the creditor. In the same posture of the present dispute, *Riddervold* determined that under New York law a debtor does *not* possess property rights in the funds utilized by his employer to make garnishment payments to a creditor. Thus it was logically unnecessary for *Riddervold* to discuss the question of *when* the debtor acquired rights in such subject funds.

In sum, *Barnhill* supports, not undermines, *Riddervold's* referencing of state law in determining the voidability of payments made to a creditor within the preference period window pursuant to a wage execution served and otherwise perfected prior to the opening of that window. Accordingly, in the proceeding at bar the Court must determine *under Connecticut law* whether the Payments were transfers of property interests of the Debtor.

**B. Determination of Connecticut Law.**

In *Riddervold,* the Second Circuit held that preference period payments made by a debtor's employer to a creditor, in compliance with a wage execution perfected under New York law prior to the opening of the preference window, did not constitute "transfer[s] of property of the debtor". 647 F.2d at 346. That holding answers, under New York law, the precise question posed under Connecticut law by the matter at bar. Thus, to the extent that Connecticut law tracks the wage execution law of New York, *Riddervold* controls the outcome of the instant matter.

The Connecticut Supreme Court has not had occasion to opine on the question of whether funds paid by a debtor's employer to a creditor of the debtor pursuant to a wage execution constitute transfers of the debtor's property. This Court is free, then, to ascertain Connecticut law independently. In that process the Court finds *Riddervold* enlightening. *Riddervold* explained that

> ... after the sheriff has taken the step described in N.Y.C.P.L.R. § 5231(d), the debtor has no property or interest in property subject to the levy which can be transferred. Service of the income execution on the employer in effect works a novation whereby the employer owes 10% of the employee's salary not to the employee but to the sheriff for the benefit of the judgment creditor.

*Id.* The Circuit Court found this determination "substantiated" by N.Y.C.P.L.R. § 5231(e), which established the legal liability of the employer for the installments due pursuant to an income execution.[4] *Id.* The Court also found its analysis consistent with earlier Circuit authority—under the Bankruptcy Act and a former codification of the New York wage execution—which endorsed the view that a wage execution operates as a "continuing levy". *Id.* (*citing In re Sims,* 176 F. 645 (S.D.N.Y.

---

**4.** N.Y.C.P.L.R. § 5231(e) (1981) provided, *inter alia,* that if an employer "shall fail to so pay the sheriff, the judgment creditor may commence a proceeding against ... [the employer] for accrued installments."

1910) (L. Hand, J.) and *In re Wodzicki,* 238 F. 571 (S.D.N.Y.1916) (Mayer, J.)).

The Connecticut wage execution law implicated in the present proceeding is not materially different from that construed by the Court in *Riddervold.* Like New York law, Connecticut law provides for employer liability in the event of non-compliance with a wage execution. *See* C.G.S. § 52–361a(g) (1998).[5] In addition, the Connecticut statute explicitly utilizes the term "continuing levy" when describing the nature and effect of a duly served and perfected wage execution. *See* C.G.S. § 52–361a(d) (1998).[6] Consequently, this Court views *Riddervold* as authoritative in the present context.[7] The Payments were not transfers of an interest of the debtor in property, and accordingly are not avoidable as preferential under Section 547 of the Bankruptcy Code.

## VI. CONCLUSION

For the foregoing reasons the motion of the Defendant for summary judgment will be **GRANTED** by separate order.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

The above-captioned contested matter having come on for hearing before this Court; and the Court having this day issued its *Memorandum of Decision on Motion for Summary Judgment,* in accordance with which

**IT IS HEREBY ORDERED** that the Defendant's Motion for Summary Judgment (Doc. I.D. No. 15) is **GRANTED.**

5. C.G.S. § 52–361a(g) provides, *inter alia,* "[i]f the employer fails or refuses to pay the earning levied against to the levying officer, the employer may be subjected to a turnover order pursuant to section 52–356b and, on a finding of contempt, may be held liable to the judgment creditor for any amounts which he has so failed or refused to pay over."

6. C.G.S. § 52–361a(d) provides, *inter alia,* "[o]n service of the execution on the employ-

er, the execution shall automatically be stayed for a period of twenty days and shall thereafter immediately become a lien and continuing levy on such portion of the judgment debtor's earnings as is specified therein. . . ."

7. Judge Alan H.W. Shiff, of this Court, followed *Riddervold* in a case arising under Connecticut's wage execution law. *In re Certain,* 30 B.R. 379 (Bankr.D.Conn.1983).