ALVA TAYLOR *vs.* HAROLD S. PRATT.

Androscoggin.     Opinion, November 18, 1937.

*Charles R. Pomeroy,*
*Brann & Isaacson,* for plaintiff.
*Edmund C. Darey,*
*Frank T. Powers,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

HUDSON, J.   By general motion the defendant asks this Court to order a new trial in this action of tort brought to recover damages which the plaintiff claims she sustained by reason of his procurement of her discharge as an employee of one Ham.

The plaintiff, a married woman, was employed on October 12, 1935, as a clerk in Ham's Drug Store in Livermore Falls. Intermittently for a period of approximately two and a half years she had worked for him, her latest service having started some five weeks before October 12th.

The defendant, a physician and surgeon, had been a valued customer of Mr. Ham for about twenty years. Previously to October 12th, the plaintiff's husband had cut his foot with an ax and the defendant attended him. It seems that the plaintiff and her husband were not satisfied with the doctor's services and had consulted other surgeons. Rumors had reached the defendant that a claim for malpractice was to be made against him. Although he denied it, the jury might have found that on October 12th the defendant, resentful, whether justified or not, visited the drug store on the day mentioned for the purpose of having a talk with the plaintiff about the prospective malpractice suit and possibly then of procuring her discharge. That there was a conversation in the store on that day between the plaintiff and the defendant, there is no question; but as to what was said is in irreconcilable dispute. The plaintiff's version is that after the defendant had inquired for the proprietor and learned that he was out, he asked when he would return. She answered, "five o'clock" and then, she continues, "he said—he gave me to understand and my husband to understand, where we were concerned, he would have no more to do with and if I was to continue

working in that store he would withdraw all prescriptions and see that none of his patients came there to have prescriptions filled." Then she added that he told her he would later see Mr. Ham concerning her.

On the other hand, the defendant, admitting that the plaintiff told him what the other surgeons had said about her husband's foot, and that there was an expectation on their part to make him pay damages, denied explicitly that he made any inquiry as to when Mr. Ham would return, that he said he would have no more to do with them, that if she remained a clerk in the drug store he would withdraw all of his prescriptions and see that none of his patients came there to trade.

Following this conversation, whatever it was, the plaintiff did not see her employer until about seven o'clock that evening, when she told him what she now claims the defendant then told her. Mr. Ham, a witness for the plaintiff, testified that some two days following October 12th he had a talk with the defendant, during which he told him what the plaintiff had said to him the evening of October 12th. He also testified that the doctor "did not deny but what he said to her was so about wherever she worked would never get any more of his business," and that he said in addition: "It isn't pleasant for me to come in and meet her where he was having a law suit." Afterwards the defendant said on the stand that what he told Mr. Ham was that "he probably should not come into the store when she was there."

That the plaintiff was discharged by her employer either on October 12th or shortly afterwards, there is no dispute.

As already stated, the case is before us on general motion. No exceptions were taken to the charge of the presiding Justice and it must be assumed that the law given was unexceptionable. The applicable law is stated succinctly in *Perkins* v. *Pendleton et al.*, 90 Me., 166, 176, 38 A., 96, 99:

> ". . . Wherever a person, by means of fraud or intimidation, procures, either the breach of a contract or the discharge of a plaintiff, from an employment, which but for such wrongful interference would have continued, he is liable in damages for such injuries as naturally result therefrom; . . ."

But the defendant insists that the plaintiff herself induced the discharge and that it was not attributable to him in any way. True it is, she testified that she was discharged by Mr. Ham in the evening of October 12th, and that the defendant did not talk with Mr. Ham until some two days later, but her employer testified that she worked for him a day or two after the 12th of October and that he discharged her the morning following his talk with the doctor, when, he said, he told her "if that was the attitude the doctor took, she would have to get through"—and that he "couldn't afford to keep her."

The time of the discharge and its cause were facts for the jury. It accepted Mr. Ham's statement as true and found that the defendant by intimidation procured her discharge from employment that would have continued but for his wrongful interference.

Manifest error not having been shown, the verdict must stand.

*Motion overruled.*