## BOSTON CASUALTY CO. v. BATH IRON WORKS CORPORATION.

### No. 3865.

Circuit Court of Appeals, First Circuit.

May 28, 1943.

Sidney W. Wernick, of Portland, Me. (Jacob H. Berman and Edward J. Berman, both of Portland, Me., of counsel) for appellant.

William B. Mahoney and Wadleigh B. Drummond, both of Portland, Me., for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This case was brought in the district court on the grounds of diversity of citizenship; judgment was rendered ordering the dismissal of the complaint and appeal has been taken to this court.

The facts as taken from the allegations of the complaint are as follows: The appellant, Boston Casualty Company, a Massachusetts corporation, is engaged in the writing of accident and health insurance exclusively. For the past eleven years it has insured many of the employees of the appellee, Bath Iron Works Corporation, organized under the laws of Maine, for health and accident under a group plan of insurance. On November 7, 1941, approximately five hundred of these employees were insured with the appellant under this plan. Prior to November 7, 1941, it had the benefit of an arrangement with the appellee by which at the request of those of its employees insured with the appellant, the appellee periodically would make deductions from the wages of its employees and would apply the amounts so deducted in payment of the premiums owing to the appellant on policies of insurance of these employees. On November 7, 1941, the appellee notified the appellant that after December 15, 1941, it would cease to make the deductions from the wages of its employees insured with the appellant and on December 15, 1941, it discontinued its former practice. Prior to November 7, 1941, the appellant had furnished the appellee various lists in regard to its policyholders who were employed by the appellee, which lists contained the names of the policyholders, the policy numbers, the employees' numbers, and the amounts of premiums due. The lists were furnished in confidence and they were not to be used for other purposes or to be divulged to other persons. In violation of this confidence, the appellee divulged the information to another insurance company in competition with the appellant, the Union Mutual Life Insurance Company, organized under the laws of the State of Maine, hereinafter called "Union Mutual". The appellee has refused the appellant permission to solicit insurance within its plant from its employees, a privilege which it had enjoyed, and has granted that privilege to the Union Mutual. In carrying on its business the latter company has had the benefit of the lists furnished by the appellant. Many of the employees of the appellee insured with appellant have cancelled their insurance with the appellant or are about to cancel it and have insured or are about to insure themselves for health and accident with the Union Mutual. Although the appellee refuses to make deductions from the wages of these employees insured with the appellant, nevertheless, it is now making and in the immediate future is about to make deductions from the wages of its employees who are or would become customers of Union Mutual. The president of the defendant corporation is a member of the board of directors of the Union Mutual and has informed the servants and agents of the appellee that because he is a director of that company he is interested in having the health and accident insurance business of its employees go to Union Mutual. It is stated that the appellee is suggesting, requesting and urging its employees insured with the appellant to take out insurance with Union Mutual and has caused those employees insured with the appellant great inconvenience in requiring them to make their premium payments at the office of appellant in the City of Bath. In this manner the appellee is exercising pressure upon its employees in order to induce them to become insured with Union Mutual. There is an allegation in the complaint that by virtue of these acts, the appellee, "knowingly, purposely, maliciously, and in violation of a confidence reposed in it by the plaintiff [appellant] has induced or otherwise caused and in the immediate future is about to induce, or otherwise cause, its employees to terminate and discontinue their business relations with the plaintiff [appellant] all to the great and irreparable damage of the plaintiff" [appellant]. As a result of this allegation the appellant demands that the appellee be enjoined from making a deduction for the benefit of Union Mutual from the wages of those employees whose names are contained in a confidential list of the policyholders furnished by the appellant; that the appellee, its officers, servants and

agents be enjoined from suggesting, inducing or otherwise causing, directly or indirectly, its employees whose names are contained in the confidential lists of the policyholders to become insured with Union Mutual; that damages be paid the appellant and that the appellee be required to pay costs.

Our only inquiry under the rule laid down in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is to determine whether a cause of action is stated under Maine law. It has been urged upon us that the Supreme Judicial Court of Maine has never decided the precise issue before us and that, therefore, we are free to determine this question in the first instance. While it is true that this court may in a proper case be called upon to determine what the local law is, there being no decided cases in point, New England Mutual Life Insurance Co. v. Mitchell, 4 Cir., 1941, 118 F.2d 414, certiorari denied 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505; Venuto v. Robinson, 3 Cir., 1941, 118 F.2d 679, nevertheless, when it is clear from the decisions of the state court what the law is, we are not at liberty to establish a new rule because we are of the opinion that it is sounder or of more general application, West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956; Yoder v. Nu-Enamel Corporation, 8 Cir., 1941, 117 F.2d 488. As was well said in the Yoder case, supra, page 489 of 117 F.2d: "* * * The responsibility of the federal courts, in matters of local law, is not to formulate the legal mind of the state, but merely to ascertain and apply it. Any convincing manifestation of local law, having a clear root in judicial conscience and responsibility, whether resting in direct expression or obvious implication and inference, should accordingly be given appropriate heed." Three cases have been cited to us which in our opinion establish the law of Maine on this subject. Heywood v. Tillson, 75 Me. 225, 46 Am.Rep. 373; Perkins v. Pendleton, 90 Me. 166, 38 A. 96, 60 Am.St. Rep. 252; Taylor v. Pratt, 135 Me. 282, 195 A. 205.

In Heywood v. Tillson, supra, an employer told his employee, who was a tenant at will of the plaintiff, that he would not employ anyone who was a tenant of the plaintiff. The court held that the employer had no duty to employ the tenant and that he could discharge him for any reason whatsoever. It was of the opinion that an act lawful in itself did not become unlawful merely because of an improper motive.

In Perkins v. Pendleton, supra, it was alleged in the complaint that a labor union by wrongful acts, inducements, threats, persuasions and grievances committed by it against the employer caused the discharge of the plaintiff because he refused to become a member of defendant union. The court held that a cause of action would lie because of the threats of force, intimidation and other overt acts of the union. In that case the court said (page 99 of 38 A.): "To intimidate an employer by threats, if the threats are of such a character as to produce this result, and thereby cause him to discharge an employe whom he desired to retain, and would have retained, except for such unlawful threats, is an actionable wrong."

In Taylor v. Pratt, supra, a doctor threatened to withdraw his patronage from a drug store if the employer did not discharge his employee and in that case judgment was rendered in favor of the employee. The court reaffirmed the rule laid down in Perkins v. Pendleton, supra.

The three cases referred to deal with an employer-employee relationship and we do not have a statement by the Maine court in a case involving facts similar to those before us, but we assume that the established rule applies to other advantageous business relations as well. In Heywood v. Tillson, supra, there appears to have been coercion since the employer threatened his employee with discharge unless he terminated his tenancy with the plaintiff. Nevertheless, the court, as we have said, was of the opinion that the employer could establish any conditions of employment no matter how unreasonable. In Perkins v. Pendleton, supra, there existed no relationship between the union and the employer and, therefore, the act was considered independently tortious as regards the plaintiff. In Taylor v. Pratt, supra, it would seem that the doctor could have refused to patronize the drug store for any reason whatsoever and yet the court was of the opinion that because of his intimidation of the employer the employee had a cause of action. It appears that Taylor v. Pratt is an advance in the Maine law in that a cause of action is granted when coercion is present regardless of the fact that the doc-

**34**

tor had a right to withdraw his patronage from the drug store. The fact remains, however, that the case reiterates the proposition that an essential element of the cause of action is fraud or intimidation.

█ In the case before us it is clear that the appellee was under no obligation to continue the service which it had gratuitously rendered appellant and it cannot be said that in refusing to render this service it coerced or intimidated those employees who were insured with the appellant. There is no suggestion in the complaint that the appellee or any of its officers threatened to discharge those employees who continued to do business with the appellant. At most it can be said that the appellee withdrew its favors from the appellant and made it more convenient for its employees to do business with Union Mutual.

Appellant takes the position that the three cases to which reference has been made are to be narrowly construed and should be restricted to their peculiar facts; that the Maine Supreme Judicial Court has never decided the issue presented to us and that, therefore, we are at liberty to follow the rule as laid down in the Restatement of Torts,[1] which it asserts grants a cause of action.

We do not say whether there is a cause of action under the Restatement rule for it is entirely clear as we have said that we are bound by the Maine cases under which no cause of action is stated.

In the oral argument before us appellant conceded that the list of employees insured with it was not a trade secret. We, therefore, do not understand what added force is given to appellant's argument by the fact that the appellee is alleged to have disclosed it.

The judgment of the District Court is affirmed with costs to the appellee.

MAGRUDER, Circuit Judge (concurring).

I agree. Appellant previously had the inside track to the insurance business with the employees at the Bath Iron Works through the favor and cooperation of the latter company, the defendant-appellee herein. Now appellant complains that appellee has transferred its favor to a competitor, Union Mutual Life Insurance Company, as a result of which Union Mutual has gained the inside track.

Whatever the motive of its action, appellee certainly was privileged to discontinue the gratuitous assistance it had been rendering to appellant by deducting from employees' wages and transmitting to appellant the premiums on policies of insurance, and by permitting appellant to solicit business on appellee's premises. Furthermore, I think appellee was privileged to transfer such gratuitous assistance to Union Mutual and to commend Union Mutual to the favorable consideration of the employees in the plant, unless, perhaps, appellee did this with the spiteful motive or purpose of inflicting pecuniary harm upon appellant, which is not alleged in the complaint. Indeed, the existence of such a purpose is negatived by the allegations in the complaint, for it appears that appellee acted as it did because its president was a director of Union Mutual and was therefore interested in augmenting Union Mutual's business.

It is true that the Bath Iron Works must have known that its action would result in causing pecuniary harm to appellant, and thus may be said to have intended such harm, though the motive of its action was, not to harm appellant, but to benefit Union Mutual. It is also true that appellee does not appear to have been serving any pecuniary interest of its own in transferring its favor to appellant's competitor. But these facts alone do not preclude the existence of a privilege in appellee. Suppose this case, which, in principle, is not unlike the case at bar: A has been in the habit of trading at B's grocery store. C, a friend of D, opens up a competing store. Though D has no pecuniary interest of his own to serve, I do not suppose anyone would deny that D, for the purpose of helping out his friend C, would be privileged to urge A to transfer his patronage from B to C, assuming D used no improper means in inducing A to take this action. And if D as an added inducement offered A the facility and convenience of driving him to C's store, provided A would agree to trade there, I think D would still be within his privilege.

---

[1] Restatement, Torts, (1939) § 766. "Except as stated in Sections 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to * * * (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby."

I find nothing in the Restatement of Torts, or in the Maine decisions discussed by Judge MAHONEY, indicating that liability would be imposed in a case like the present. Cf. Farrington v. Stoddard, 1 Cir., 1940, 115 F.2d 96, 100, 131 A.L.R. 1344.