AETNA CASUALTY & SURETY CO.
*vs.*
EASTERN TRUST & BANKING CO.

Penobscot.   Opinion, May 17, 1960

*Locke, Campbell, Reid & Hebert*

*Mitchell & Ballou*

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WILLIAMSON, C. J. This is a controversy between a surety and a bank over payments received by the bank as assignee of two construction contracts. The case is before us on appeal by the bank from a decree in equity establishing a trust in such payments to cover losses of the surety.

Under the familiar rule the case is heard anew on the record. Facts found by the sitting justice stand "unless shown to be clearly erroneous." *Andrews* v. *Dubeau et al.,* 154 Me. 254, 146 A. (2nd) 761, and cases cited. We are not of course precluded by the rule from finding additional facts on which to base our decision.

James M. Blenkhorn entered into contracts with the United States of America for construction of facilities at Loring Air Force Base (the Loring contract or job) dated December 31, 1954, and with the James W. Sewall Company for construction of a building in Old Town (the Sewall contract or job) dated May 11, 1955.

The plaintiff became the surety on performance and payment bonds on the Loring contract pursuant to the Miller

Act, 40 U.S.C.A. § 270a, and on a performance bond on the Sewall contract.

> "As part of the transactions (to quote from the finding of the sitting justice) by which plaintiff became surety for Blenkhorn, and in consideration of plaintiff becoming surety on his bonds, as aforesaid, Blenkhorn executed and delivered to plaintiff application-assignments, dated December 31, 1954, and June 6, 1955, respectively, . . wherein Blenkhorn 'subrogated' the plaintiff as surety, as of the respective dates of the instruments, 'to all rights, privileges and properties of the principal in said contract' and Blenkhorn assigned, as of the date of each instrument, 'all the deferred payments and retained percentages arising out of this contract, and any and all moneys and properties that may be due and payable' to Blenkhorn upon the occurrence of any one of five events, one of which was Blenkhorn's failure to pay bills incurred on the work when they became due and payable whether the plaintiff might be liable for such bills or not, and the assignment included any moneys that 'may thereafter become due and payable on account of the contract, or account of extra work or materials supplied in connection therewith,' and Blenkhorn agreed that all such moneys and proceeds of such payments should be the sole property of the plaintiff, to be by it credited upon any loss, damage, charge and expense sustained or incurred by it under any bond of suretyship it had executed for Blenkhorn."

The sitting justice also found that "Blenkhorn's failure to pay bills for labor and materials incurred on the work when they became due and payable occurred at the very inception of the work so that the assignments which Blenkhorn gave to plaintiff were operative according to their terms from the date plaintiff became bound on each of its bonds."

As we read the record, there is nothing to indicate that Blenkhorn was in default from the outset. The finding, how-

ever, is not decisive. It sufficiently appears that under each contract there was a default before the assignment to the bank later discussed.

The defendant in fact had no knowledge of the application-assignments until the present bill in equity was brought in June 1957.

Blenkhorn completed the work under the contracts, but failed to pay subcontractors and material men. The plaintiff, as required by the payment bond on the Loring contract, on April 17, 1956, paid the bond penalty of $44,950 pro rata among the claimants, amounting to 85% of the claims, and as required by the performance bond on the Sewall contract reimbursed the Sewall Company on February 14, 1956 in the amount of $4,925 for its expense in discharging lien claims. The plaintiff's loss is thus established at $49,875.

We turn to the facts surrounding the payments to the defendant on which the claimed liability is based. For convenience we will discuss the Loring and Sewall contracts separately, unless otherwise indicated.

## LORING CONTRACT

Prior to August 1, 1955, Blenkhorn assigned certain progress payments to the defendant, and from the payments received by him from the United States paid the defendant on his loans as follows:

| Assignment | Payment by U. S. | Payment to Bank |
|---|---|---|
| April 8 — loan $ 9,200 | $ 9,200.45 | April 15 — $ 9,200 |
| May 3 — " 12,750 | 16,439.55 | May 11 12,750 |
| July 28 — renewal loan 8,000 | 12,670.00 | Aug. 12 3,086.71 |

$25,036.71

The three assignments were not perfected under the Assignment of Claims Act, 31 U.S.C.A. § 203, and were not

known to the plaintiff until after the commencement of the present litigation.

The last assignment from Blenkhorn to the defendant, dated August 11th, was perfected under the federal statute, *supra,* with notice to the United States and to the plaintiff surety. The assignment covered "all the assignor's rights, title and interest in, and to all monies due or to become due from the United States of America. . ." under the Loring contract, and reads in part:

> "The Assignor covenants that it will receive any moneys advanced hereof by the Assignee as a trust fund to be first applied to the payment of claims of subcontractors, architects, engineers, laborors, and materials, that may arise out of performance of said contract, and to the payment of premiums on any surety, bond or bonds signed with the United States of America or any Department or Agency thereof, and that it will apply the same to such payments only before using any part of the advances for any other purposes."

The plaintiff acknowledged receipt of the notice and of a copy of the instrument of assignment, "subject to complete reservation of our rights." All remaining payments on the Loring contract were paid directly by the United States to the defendant, as follows:

| | |
|---|---|
| Sept. 15, 1955 | $ 3,420.00 |
| Oct. 19, 1955 | 7,700.00 |
| Mar. 12, 1956 | 1,931.52 |
| Jan. 22, 1957 | 4,630.16 |
| (final payment) | $17,681.68 |

The $3,420 item was at once credited to Blenkhorn's checking account and was neither retained by the defendant nor applied on Blenkhorn's loans. The $7,700 item was retained by the defendant and applied with other moneys on January 4, 1956, on Blenkhorn's loans. The $1,931.52 item

was applied in part to cover checks, overdrafts and small loans with a small balance remaining in Blenkhorn's favor. The final payment of $4,630.16 has been held by the defendant in a treasurer's check pending decision in this case.

The payments received by the defendant under the Loring contract and claimed by the plaintiff total $42,718.39.

## SEWALL CONTRACT

On August 2, 1955, Blenkhorn assigned the proceeds of the Sewall contract to the defendant. The first payment of $6,098.55 on September 9, 1955 from Sewall Company to the defendant was applied at once on Blenkhorn's notes. The second payment of $2,161.40 on October 15 was retained by the defendant and applied with the Loring item of $7,700 and other money on Blenkhorn's loans on January 4, 1956. The payments total $8,259.95.

The plaintiff, as we have seen, seeks to reach the payments to the defendant on both contracts amounting to $50,978.34. None of the proceeds of the loans made by the bank to Blenkhorn were traced to either the Loring or the Sewall contracts.

Default by Blenkhorn first came to notice of the plaintiff on the Sewall contract on October 12, and on the Loring contract on October 24. Until then the plaintiff had no reason to believe that the application-assignments were in operation. The defendant, although without knowledge of the application-assignments until the commencement of this litigation, knew there were performance and payment bonds on the Loring contract by virtue of the Miller Act, and from mid-August knew there was a performance bond on the Sewall contract.

To gain a clearer picture, it will be helpful to examine the relationship of the defendant with Blenkhorn from the first

of August 1955. The defendant then agreed to make Blenkhorn loans to meet the weekly payrolls on several jobs and assignments were taken of several contracts as security, in addition to the Sewall and Loring contracts. The defendant knew, or should have known, on August first that there were unpaid bills on the Sewall and Loring jobs. At the very least, the defendant was put upon inquiry to ascertain the facts.

The defendant's auditor makes this plain in the following testimony:

"We felt that if we could loan him his payrolls and he could continue to operate his business eventually when he collected his retents he would be in a position where he could pay everybody off."

\* \* \* \* \* \* \* \* \* \*

"I don't think I was looking so much at jobs as I was the amount of money he owed people. For example, Page on cement, and possibly Bancroft & Martin on steel, and that sort of thing. I was more interested in how much total he owed each individual than the jobs they wanted. As far as we were concerned it was all one big file."

There was no attempt by the defendant to compel the application of the proceeds of the loans to the payroll of the Sewall or Loring or any particular job. In the expressive phrase of the auditor "it was all one big file." The position of the defendant in paying no attention to the particular contracts is more understandable in light of the advice from Blenkhorn on August first, that on twelve contracts, including Sewall and Loring, he had drawn $311,000 with a balance due or to become due of $530,000.

In the Loring assignment of August 11th, Blenkhorn agreed to use advances for the limited purposes of paying for labor, materials and other charges arising under the contract. There is no suggestion (and indeed the evidence

proves otherwise) that the defendant made advances on the strength of this agreement, or intended that Blenkhorn should carry out its terms. The very purpose of the loans was not to provide for the payroll or other charges on the Loring job (or on the Sewall job), but to meet payrolls generally.

Blenkhorn's financial difficulties were brought sharply home to the defendant about October first when the defendant set off Blenkhorn's checking account balance of over $9,000 against his notes. Tax liens had been filed by the United States shortly before the setoff. The auditor tells us "that is what tipped over the whole apple cart."

We have then over $50,000 paid by the United States and the Sewall Company on the Blenkhorn contracts reaching the defendant. Of this amount over $42,000 has been applied on Blenkhorn's indebtedness, of which no part of the proceeds was used so far as the record discloses, to pay claims for labor, materials or other purposes entitled to protection under the bonds. In round figures the balance of $8,000 includes $3,400 transferred to Blenkhorn's checking account and $4,600 held awaiting decision. Blenkhorn, as we have seen, failed to pay bills arising from the Loring and Sewall contracts with loss to the plaintiff surety of $49,875.

We are concerned with three statutes.

(1) The Miller Act, 40 U.S.C.A. § 270a. Under this Act Blenkhorn was required to furnish performance and payment bonds on the Loring contract with the United States.

(2) The Assignment of Claims Act, 31 U.S.C.A. § 203. Under this Act a contract with the United States (such as the Loring contract) may be assigned to a financial institution (such as the defendant bank), with notice together with a copy of the assignment to the surety. The United

States, under the Act, cannot require restitution of any amounts received by the assignee, as here the defendant.

(3) The Maine Assignment of Accounts Receivable Act, R. S., c. 113, § 171, which reads:

> "**Assignment of Accounts.** — Every written assignment made in good faith, whether in the nature of a sale, pledge or other transfer, of an account receivable or of an amount due or to become due on an open account or on a contract, all hereinafter called 'account,' with or without the giving of notice of such assignment to the debtor shall be valid, legal and complete at the time of the making of such assignment and shall be deemed to have been fully perfected at that time. Thereafter no bona fide purchaser from the assignor, no creditor of any kind of the assignor and no other assignee or transferee of the assignor in any event shall have or be deemed to have acquired any right in the account so transferred or in the proceeds thereof or in any obligation substituted therefor which in any way shall affect the rights therein of the original assignee. In any case where, acting without knowledge of such assignment, the debtor in good faith pays or otherwise satisfies all or part of such account to the assignor, or to such creditor, subsequent purchaser or other assignee or transferee, such payment or satisfaction shall be acquittance to the debtor to the extent thereof, and such assignor, creditor, subsequent purchaser or other assignee or transferee shall be a trustee of any sums so paid and shall be accountable and liable to the original assignee therefor."

The plaintiff contends it should prevail as assignee under the application-assignments against the defendant under later assignments, and also as surety under principles of equitable subrogation. The decision of the sitting justice was in substance based on both grounds.

In our opinion the Maine Assignment of Accounts Receivable Act, *supra,* controls, and under its terms the defendant,

as second assignee, became trustee for the plaintiff, the first assignee.

The Maine Act covers the assignment of contracts such as the Loring and Sewall contracts. The defendant urges that the Act is limited to accounts receivable and so is not here operative. The Act, however, specifically applies to a "contract." We cannot say in face of the plain words of the statute that contracts, such as the construction contracts before us, are not within its reach.

The application-assignments to the plaintiff were valid and effective assignments of the contracts when made within the meaning of the Maine Act. Each became operative on two conditions: first, if money became payable to Blenkhorn under the contract, and second, if Blenkhorn defaulted on his contract within the terms of the assignment. Clearly the first condition does not destroy the present effectiveness of an assignment. No more does the presence of the second condition. In each instance the operation of the assignment hinges upon acts of the assignor. The assignment was good. *American Employers Ins. Co.* v. *School District* (N. H.), 107 A. (2nd) 684. See also 4 Corbin on Contracts § 901.

The effectiveness of the application-assignment does not depend upon prior notice to the debtor, that is to say to the United States, or the Sewall Company. The Maine Act expressly provides that the assignment "with or without the giving of notice . . . to the debtor" shall be valid and deemed perfected. The second assignee, as here the defendant, takes subject to the first assignment, and "shall be a trustee . . . and accountable . . . to the original assignee therefor." Notice of the default or of the application-assignment is not required to establish liability in the second assignee.

The application-assignment of the Loring contract was not rendered invalid against the defendant by 31 U.S.C.A. § 203. The United States may disregard an assignment not

perfected under the statute, and so it may be said that the application-assignment was ineffective or invalid against the United States. The assignment nevertheless retains its normal force and strength among the parties, other than the United States. *McKenzie* v. *Irving Trust Co.*, 323 U. S. 365, 65 S. Ct. 405, 407; *California Bank* v. *U. S. F. & G. Co.*, 129 F (2nd) 751, 753 (C. C. A. 9) ; *Martin* v. *National Surety Co.*, 300 U. S. 588, 57 S. Ct. 531; *Bank of Arizona* v. *National Surety Corporation*, 237 F. (2nd) 90 (9th C. A.) ; *United States Cas. Co.* v. *First Nat. Bank of Columbus,* 157 F. Supp. 789 (D. C. Ga.) ; *American Fidelity Co.* v. *Nat. City Bank of Evansville,* 266 F. (2nd) 910 (D. C. Cir.).

We conclude, therefore, that under R. S., c. 113, § 171, the plaintiff as a prior assignee from Blenkhorn must prevail over the defendant as a subsequent assignee. The amounts received by the defendant as assignee are held in trust for the plaintiff, unless there are compensating equities in favor of the defendant.

The defendant strongly urges that the plaintiff is estopped to assert the application-assignment of the Loring contract by its acknowledgment of the notice of the assignment to the defendant "subject to complete reservation of our rights."

The argument is necessarily limited to transactions under the Loring assignment of August 11. There is no suggestion of any failure on the part of the plaintiff to advise the defendant of the application-assignments with reference to the earlier Loring or the Sewall assignments.

> "The burden of proof is upon the one who asserts the estoppel. This burden must be maintained by proof that is clear. . . Not only must the proof be clear but estoppel cannot rest upon mere conjecture. . . This rule as to the quantum of proof, which is another way of stating that the proof of an estoppel must be full, clear and convincing, ap-

plies to every essential element necessary to the creation of estoppel. The estoppel here sought to be enforced against the plaintiff is based upon its failure to report to the defendant, within a reasonable time after receiving the freight bills in question, its failure to make collection. In other words, the defendant relies upon an estoppel based upon silence. Silence may give rise to estoppel but only when there is a duty to speak."

*B. & M. Railroad* v. *Hannaford Bros., et al.,* 144 Me. 306, 314, 68 A. (2nd) 1.

Such a reservation by a surety, says the defendant in substance, told nothing of the application-assignment with its rigorous conditions operative upon Blenkhorn's default. The application-assignment remained hidden, it is said, in the fine print of the bond application when it was the duty of the plaintiff to bring it into view.

In our view the finding of the sitting justice, implicit in his decision, that there was no estoppel proved against the defendant is fully substantiated by the evidence, and stands approved. The acknowledgment by the plaintiff does not, it is true, spell out the existence of an application-assignment. At the least, however, the language is calculated, as we read the record, to place the defendant on guard. What were the rights reserved by the plaintiff? The defendant had it chosen could readily have made inquiry. The acknowledgment by the plaintiff did not deny the possibility of a prior application-assignment to the plaintiff surety.

Further, the defendant has not established that the plaintiff's failure to disclose the application-assignment caused the loss. On the contrary, the direct cause of the defendant's loss lies in the diversion of the loans from the Loring contract to the payrolls in general as agreed upon and intended by the defendant and Blenkhorn. If Blenkhorn had carried out the plain provisions of the perfected assignment, the proceeds of the loans would have gone to the job, would have

benefited the plaintiff surety, and the defendant would have been entitled to apply moneys received from the United States in payment of the loans.

None of the cases called to our attention involve the application of a *non-notification* assignment statute such as R. S., c. 113, § 171. Three cases heavily relied upon by the defendant are distinguishable from the instant case for this reason alone. In each instance the bank under assignment perfected in accordance with 31 U.S.C.A. § 203 was successful in retaining payments from the United States against the surety. In *Bank of Arizona* v. *National Surety Corporation, supra,* the proceeds were received by the bank before notice of the prior application-assignment to the surety. In *United States Cas. Co.* v. *First Nat. Bank of Columbus, supra,* there was no showing of default by the contractor making the application-assignment operative before payment by the United States to the bank. The proceeds of the loans had gone into the job in question. In *American Fidelity Co.* v. *Nat. City Bank of Evansville, supra,* the bank retained progress payments from the United States received before default by the contractor against the surety who was not claiming under an application-assignment. It also appeared there was no fraudulent diversion of the proceeds of the loan from the particular contract in question.

The payments to the defendant under the Loring contract may be placed in three classes.

First — the defendant received $25,036.71 on three assignments dated before August first. The payments with the assignments first came to plaintiff's attention at the hearing. Although the claims were not asserted in the plaintiff's bill, nevertheless the sitting justice considered and ruled upon them. Under the circumstances it would be a useless and unnecessary act to return the bill for amendment. Compare Maine Rules of Civil Procedure, Rule 54 (c).

The defendant would deny the early assignments. It urges that they were ineffective, and that Blenkhorn paid the defendant simply as an ordinary creditor and not by virtue of the assignments.

The defendant cannot escape the burden of the assignments so readily. Except with reference to the United States, the assignments from Blenkhorn to the plaintiff and to the defendant were entitled to their proper force and effect. It cannot now keep as a creditor that which it could not retain as an assignee. The defendant in taking the assignment placed itself within the bounds of the Maine statute, *supra*.

Second—the $3,420 payment under the August 11th assignment was, in our opinion, erroneously charged to the defendant in the final decree. The defendant did no more than release part of its security to the contractor who was so far as the defendant was then aware entitled to receive and use it in ordinary course of business. The situation under the first three assignments when the contractor was the conduit of payments from the United States to Blenkhorn to the defendant as assignee is analogous. Here the defendant was the conduit of payment from the United States to the defendant to Blenkhorn. In each instance we brush aside the conduit and find in the one case a payment from the United States to the assignee, and in the other to the contractor.

Third — the remaining payments of $14,261.68 to the defendant under the perfected assignment fall within the operation of R. S., c. 113, § 171. The plaintiff assignee prevails over the defendant as the subsequent assignee. There is no estoppel against the plaintiff for the reasons stated above.

The total amount held in trust for the plaintiff upon the Loring contract is $39,298.39, consisting of $25,036.71 re-

ceived on three assignments prior to August 11th, and $14,261.68 on the August 11th perfected assignment.

On the Sewall contract, under R. S., c. 113, § 171, the plaintiff is entitled to recover the loss of $4,925 arising from the satisfaction of mechanic's liens and the balance as well insofar as necessary to meet the Loring contract loss. The application-assignment was given to indemnify the plaintiff for loss not only on the Sewall contract, but on all other contracts as well.

The losses and funds available may be summarized:

| Claims paid by plaintiff | | Held in trust by defendant | Balance |
|---|---|---|---|
| Loring contract | $44,950 | $39,298.39 | — — — — |
| Sewall " | 4,925 | 8,259.95 | $3,334.95 |
| | $49,875 | $47,558.34 | |

The balance or excess over loss on the Sewall contract goes therefore to the plaintiff on the Loring contract loss. In short, Sewall money reimburses the plaintiff for Loring losses, but not, it is to be noted, until Sewall losses have been paid.

The controversy, it is to be noted, is between the surety and the bank. Responsibility of the surety, if any, to the creditors is in no way in issue in this case.

Liability of the defendant thus rests on the application of the Maine assignment statute, *supra*. It is unnecessary therefore that we consider the alternative grounds suggested by the plaintiff based on suretyship and on the application-assignments entirely apart from the Maine assignment statute, *supra*. We express no view on the extent, if any, to which liability attaches on these grounds.

Under the circumstances we consider it equitable that the defendant be charged with interest from the commencement

of the bill in equity on June 17, 1957, and not from the earlier dates on which the plaintiff paid the losses. There is, as we have noted, no evidence that the defendant knew the fact of the application-assignments, on which indecision rests, until the bringing of the bill, or that any demand for payment was made before then. In addition, claims of over $25,000 were not raised until hearing.

## SUMMARY

The loss of the plaintiff surety on the two bonds is $49,875 with interest. Between the plaintiff and the defendant, the defendant holds the moneys received on the assignments in the amount of $47,558.34 with interest from June 17, 1957, in trust for the plaintiff.

Execution shall issue on failure of the defendant to make payment as ordered.

The entry will be

*Appeal sustained. Remanded for entry of a decree in accordance with this opinion. Costs to be taxed prior to appeal against the defendant; on appeal against the plaintiff.*