**The DOLE COMPANY, Plaintiff**

v.

**The AETNA CASUALTY AND SURETY COMPANY, Defendant.**

Civ. No. 1556.

United States District Court
D. Maine, N. D.

May 3, 1967.

ness at Bangor, Maine. Defendant, The Aetna Casualty and Surety Company, is a Connecticut corporation engaged in the insurance business and authorized to transact business in the State of Maine. On October 24, 1962 Dole entered into a subcontract with William A. Berbusse, Jr., Inc., a general contractor, by which Dole agreed, for the contract price of $197,500, to furnish the labor and materials necessary to complete the electrical work required for the construction by Berbusse of an addition to the Thayer Hospital, Waterville, Maine. Aetna became the surety on the performance and payment bond furnished by Dole to Berbusse as required by the terms of the subcontract. As part of the transaction by which Aetna became surety on this bond, Dole executed and delivered to Aetna the standard form of bond application and indemnity agreement which gives rise to the issues presented by this case. In this application and indemnity agreement Dole agreed to indemnify Aetna against any loss sustained by reason of its suretyship on the Berbusse bond and on any other bonds furnished by Aetna for Dole. As security for this indemnity undertaking, Dole further agreed that Aetna should be subrogated, as of the date of the agreement, to all Dole's rights under its contract with Berbusse, and Dole assigned to Aetna all sums due and to become due under the contract upon the happening of any one of several contingencies, including Dole's failure to pay bills incurred on the work when they became due and payable and the filing by or against Dole of any proceeding alleging its insolvency.[1]

Gerald E. Rudman, Gene Carter, Bangor, Me., for plaintiff.

Bradford H. Hutchins, Waterville, Me., Elmer W. Beasley, Hartford, Conn., for defendant.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is an action under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202 (1964), seeking a declaration of the rights of the parties with respect to a fund of $19,000 now in the possession of the defendant.

The essential facts have been stipulated and are as follows. Plaintiff, The Dole Company, is a Maine corporation engaged in the electrical contracting business, with its principal place of busi-

---

1. The subrogation agreement and assignment is contained in Clause Fourth of the indemnity agreement, which reads as follows:

 *Fourth:* That the said company, as surety on said bond, as of this date, shall be subrogated to all rights, privileges and properties of the principal(s) in said contract, and said principal(s) do hereby assign, transfer and convey to said company all the deferred payments and retained percentages arising out of this contract, and any and all monies and prop-

erties that may be due and payable to said principal(s) at the time of the happening of any of the occurrences mentioned in clauses one, two, three, four and five of the next preceding paragraph, or that may thereafter become due and payable to said principal(s) on account of this contract or on account of extra work or materials supplied in connection therewith, hereby agreeing that all such monies and the proceeds of such payments and properties shall be the sole property of the said company, and to be

Between June 1, 1961 and November 2, 1962, Dole entered into three other subcontracts for electrical work on unrelated projects in Vermont and Massachusetts with H. I. Lewis Construction Company, Inc., Cass-Warner Corporation and Scaldini, Inc., and entered into two prime contracts with the United States Government for electrical work at Dow Air Force Base, Bangor. Aetna became surety on the performance and payment bond furnished by Dole under each of these contracts, and in each instance Dole executed an indemnity agreement which was identical in terms to that furnished by it in connection with the Berbusse contract.[2]

On January 17, 1963 Dole filed in this Court a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–799 (1964), and on the following day Dole was authorized by the referee in bankruptcy to remain in possession of its property and to operate its business, as debtor in possession, under the jurisdiction of the bankruptcy court. Bankruptcy Act §§ 342, 343, 11 U.S.C. §§ 742, 743 (1964). As of the date of the petition, Dole had unpaid bills for labor and materials under its contracts amounting to more than $36,000, for which Aetna was exposed to liability under the payment provisions of its bonds.[3] As of the same date, the uncompleted work under Dole's contracts with the general contractors

and the United States Government amounted to approximately $339,000.

On January 29, 1963, after it received notice of the Chapter XI proceeding, Aetna for the first time notified Berbusse and the other general contractors of the assignments to Aetna of the proceeds of the subcontracts between each of them and Dole. These notices demanded that each of the general contractors make all further payments under its contract with Dole directly to Aetna.

Aetna, relying on its asserted status as a secured creditor by virtue of Dole's assignments of the proceeds of its various contracts, did not file a proof of claim in the Chapter XI proceeding and although Dole, as debtor in possession, initiated proceedings before the referee to have Aetna declared to be an unsecured creditor, the bankruptcy court made no determination of Aetna's status. Instead, with the consent of all interested parties, the referee ordered Dole to establish a separate account for each contract, into which all contract payments were deposited and out of which all expenses were paid. Under this arrangement, Dole, as debtor in possession, finished the work required by its contracts, the last of which was completed on November 30, 1964. In the meantime, the Chapter XI arrangement was confirmed by the court on February 19, 1964, the plan proposed by Dole was com-

by it credited upon any loss, damage, charge and expense sustained or incurred by it as above set forth under any bond of suretyship it has executed for the undersigned principal(s).

2. In the Lewis contract, dated June 1, 1961, Dole agreed, for the price of $31,-690, to complete the electrical work required by Lewis' contract with the United States Government for the construction of radar facilities at the North Concord Air Force Station, North Concord, Vermont. The Cass-Warner contract, dated February 2, 1962, covered the electrical work required by a contract between Cass-Warner and the City of Rutland, Vermont for the construction of a sewage treatment plant. The contract price was

$24,500. The Scaldini contract, dated July 27, 1962, involved the electrical work required by a contract between Scaldini and the City of Dracut, Massachusetts for the construction of a junior high school. The contract price was $70,548. The two contracts with the United States Government were for the repair of the primary "C" switch system and the hydrant system at Dow Air Force Base. The first contract was dated August 14, 1962 and in the amount of $63,069. The second contract was dated November 2, 1962 and in the amount of $48,484.

3. The Chapter XI petition also recited that Dole was "unable to pay its debts as they mature."

pleted, and the Chapter XI proceeding was terminated.[4]

Following the termination of the Chapter XI proceeding, Aetna, on December 9, 1964, asserted a claim, by virtue of its indemnity agreement with Dole, to the balance of $37,412.56 due Dole upon the completion of the Berbusse contract, and notified Berbusse to pay this amount directly to Aetna as Dole's assignee. Thereafter, Dole, Aetna and Berbusse, with the approval of the bankruptcy court, worked out an agreement by which Berbusse paid over to Aetna the sum of $19,000 here in dispute, subject to a subsequent court determination of the rights of the parties with respect thereto, and Berbusse paid to Dole the balance of the funds due under the contract.

In the present proceeding, Dole seeks a declaration by this Court that Aetna had no security interest in the proceeds of the Berbusse contract when the Chapter XI proceeding was commenced; that Aetna was therefore an unsecured creditor of Dole at that time; and that under the applicable provisions of the Bankruptcy Act any claim Aetna might have had to the contract proceeds was discharged upon confirmation of the Chapter XI arrangement. Bankruptcy Act § 371, 11 U.S.C. § 771 (1964).[5] Aetna, on the other hand, contends that it had, by virtue of the assignment in its indemnity agreement with Dole, a security interest in the proceeds of the Berbusse contract as of the date of filing of the Chapter XI petition; that its security interest in the contract proceeds was unaffected by the Chapter XI proceeding; and that it is entitled to retain such portion of the $19,000 fund now in its possession as is required to reimburse it for all loss incurred by reason of its suretyship on the various bonds furnished by Aetna for Dole.[6] The Court agrees with Aetna's position.

---

4. The plan provided for payment to all unsecured creditors in the amount of 20% of their claims, and all consenting unsecured creditors have been paid.

5. Section 371 of the Bankruptcy Act provides that the confirmation of a Chapter XI arrangement shall discharge the debtor from all unsecured debts provided for by the arrangement, except as provided in the arrangement or the order of confirmation, and except for debts which are not dischargeable under Section 17 of the Act, 11 U.S.C. § 35 (1964). The plan proposed by Dole and confirmed by the referee provided for the payment of all unsecured creditors in the amount of 20% of their claims. See n. 4, supra. In view of the Court's conclusion, infra, that Aetna was a secured creditor with respect to the proceeds of the Berbusse contract, it is not necessary to consider the status of Aetna's present claim had Aetna been an unsecured creditor, whose claim was admittedly contingent and unliquidated, when the Chapter XI proceeding was initiated. But see Bankruptcy Act §§ 57d, 57i, 63a(8), 63d, 11 U.S.C. §§ 93(d), 93(i), 103a(8), 103d (1964); Williams v. United States Fid. and Guar. Co., 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915); Hartman v. Utley, 335 F.2d 558 (9th Cir. 1964); St. Paul-Mercury Indem.

Co. v. Dale, 70 S.D. 137, 15 N.W.2d 577 (1944); 3 Collier, Bankruptcy, para. 57.-15(2) at 233 (14th ed. 1966). The questions raised by Aetna's claimed equitable rights as surety are equally moot. See Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); Prairie State Nat. Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896).

6. The amount of Aetna's loss has not yet been established. As of the date of the hearing in this action, Aetna was claiming the sum of $6,576.75, the amount of a judgment, from which an appeal was pending, entered against it on April 26, 1966 by the United States District Court for the District of Vermont in favor of General Electric Supply Company for materials furnished to Dole under the Lewis contract; an undetermined amount for legal services in defending both itself and Lewis and its surety in the Vermont action; the sum of $2,458.06 for auditing services required to protect its interests in the Chapter XI proceeding; the sum of $5,768.41 for legal services in connection with the Chapter XI proceeding; and an undetermined amount for legal services in connection with the present action. The parties have agreed

Dole makes a three-fold attack upon Aetna's claim to the proceeds of the Berbusse contract. Its principal contention is that, under the law of Massachusetts, which Dole argues is the applicable law, the attempted assignment of the contract proceeds was ineffective to create a security interest in Aetna, because Aetna failed to perfect its assignment by filing the financing statement required by Section 9–302 of the Uniform Commercial Code, which was in effect in Massachusetts at the time, Mass.Gen.Laws Ann. ch. 106, § 9–302 (1963) [7]; and that hence the assignment was ineffective as against the debtor in possession under the provisions of Section 70c of the Bankruptcy Act, 11 U.S.C. § 110(c) (1964).[8] It is clear, however, that this Court must look to the law of Maine, and not to that of Massachusetts, in this case.

It is axiomatic that in a diversity of citizenship action this Court must follow the substantive law, including the choice of law rule, that would be applied by the courts of the state in which it sits. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Sampson v. Chan-nell, 110 F.2d 754, 760–762, 128 A.L.R. 394 (1st Cir.), cert. denied, 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415 (1940); Katz v. Gordon Johnson Co., 160 F.Supp. 126, 129–130 (D.Me.1958).

The parties are in agreement as to the applicable Maine choice of law rule. It has long been the established law of Maine, as elsewhere, that the validity and effect of a contract is to be determined "by the law of the place where it is made" and that "[i]n determining the place where a contract is made, * * * it is deemed to have been executed at the place where the last act necessary to complete it was done." Emerson Co. v. Proctor, 97 Me. 360, 363–364, 54 A. 849, 850–851 (1903); Boscho, Inc. v. Knowles, 147 Me. 8, 83 A.2d 122 (1951); Restatement, Conflict of Laws, §§ 332, 352, 311 (1934).[9]

In the present case, it has been stipulated that the bond application and indemnity agreement was executed and delivered by Dole's president to Aetna's resident agent at Bangor, and forwarded by the latter to Aetna's branch office in Boston. Examination of the application shows that it was subject to acceptance by the act of Aetna in issuing the required bond. Upon receipt of the ap-

that in the event of a determination favorable to Aetna in this action, the portion of the $19,000 fund to which it is entitled will be determined by the Court following a further hearing.

7. Mass.Gen.Laws Ann. ch. 106, § 9–302 (1963) requires (with certain exceptions not here material) the filing of a financing statement in order to perfect a security interest. Mass.Gen.Laws Ann. ch. 106, § 9–301 (1963) provides that an unperfected security interest is subordinate to the rights of any person who becomes a "lien creditor" without knowledge of the security interest and before it is perfected. Section 9–301 further defines a "lien creditor" to include a trustee in bankruptcy from the date of the filing of the petition.

8. Under Section 70c of the Bankruptcy Act a trustee in bankruptcy stands in the shoes of a hypothetical creditor who could have obtained a lien on property of the bankrupt at the date of bankruptcy. By Section 342 of the Bankruptcy Act, 11 U.S.C. § 742 (1964), a debtor in possession in a Chapter XI proceeding is vested with the rights and powers of a trustee in bankruptcy.

9. In the leading Maine case of Emerson Co. v. Proctor, supra, a written proposal for the conditional sale of personal property signed by the seller in Maryland was mailed to the buyer in Maine. The buyer signed his acceptance in Maine, and returned the agreement to the seller in Maryland. The court held that the act of acceptance was the last act necessary to complete the contract; that Maine was therefore the place where the contract was made; and that since the contract had not been recorded in accordance with the laws of Maine, it was invalid as against an assignee of the buyer.

plication, Aetna executed the bond in its Boston office and mailed it to its Bangor agent, in whose office the bond was executed by Dole's president and countersigned by Aetna's agent, as required by Maine law before it could become effective. Me.Rev.Stat.Ann. tit. 24, § 525 (1964).[10] The agent then delivered the bond to Dole, which in turn delivered it to Berbusse. Plainly, on these facts, the "last act" necessary to complete the transaction was the delivery of the countersigned bond by Aetna's agent to Dole in Bangor, for it was only upon the receipt by Dole of the countersigned bond that a binding contract was created. Consequently, there is no question but that, under the Maine choice of law rule, the Maine courts would apply to this case the substantive law of Maine, not that of Massachusetts.[11]

The substantive law of Maine governing the validity and effect of Dole's assignment to Aetna of the proceeds of the Berbusse contract is to be found in the Maine Assignment of Accounts Receivable Act, R.S.Me., ch. 113, § 171 (1954),[12] which was in effect at all times here relevant.[13] This Act provided:

> Every written assignment made in good faith, whether in the nature of a sale, pledge or other transfer, of * * * an amount due or to become due * * * on a contract, all hereinafter called 'account,' with or without the giving of notice of such assignment to the debtor shall be valid, legal and complete at the time of the making of such assignment and shall be deemed to have been fully perfected at that time. Thereafter no bona fide purchaser from the assignor, no creditor of any kind of the assignor and no other assignee or transferee of the assignor in any event shall have or be deemed to have acquired any right in the account so transferred or in the proceeds thereof or in any obligation substituted therefor which in any way shall affect the rights therein of the original assignee. In any case where, acting without knowledge of such assignment, the debtor in good faith pays or otherwise satisfies all or part of such account to the assignor, or to such creditor, subsequent purchaser or other assignee or transferee, such payment or satisfaction shall be acquittance to the debtor to the extent thereof, and such assignor, creditor, subsequent purchaser or other assignee or transferee shall be a trustee of any sums so paid and shall be accountable and liable to the original assignee therefor.

This Assignment of Accounts Receivable Act was authoritatively construed and applied by the Maine court in the recent case of Aetna Cas. & Sur. Co. v. Eastern Trust & Banking Co., 156 Me. 87, 161 A.2d 843 (1960), a case which

10. Me.Rev.Stat.Ann. tit. 24, § 525 provides (with exceptions not presently material) that a foreign insurance company which is licensed to do business in Maine may not effect an insurance contract covering a resident of Maine, property situated in Maine, or a risk incident to the performance or non-performance of an obligation to be performed in Maine, unless it is issued or countersigned by a resident agent.

11. It is equally clear that if the applicable choice of law rule were the law of the place of performance, cf. Flynn v. Currie, 130 Me. 461, 157 A. 310 (1931), or the law of the place of the most significant contacts or relationship, see Restatement (Second), Conflict of Laws § 332 (Tent. Draft No. 6, 1960), the Uniform Commercial Code § 1-105, Me.Rev.Stat.Ann. tit. 11, § 1-105 (1964) and comment following, the substantive law of Maine would still apply, for the contract was to be performed in Maine and Maine plainly had all the significant contacts with it.

12. The Maine Assignment of Accounts Receivable Act is one of numerous state "validation acts," adopting the so-called New York rule and validating an assignment of accounts as against subsequent bona fide purchasers regardless of notice to the account debtors. See 3 Collier, Bankruptcy para. 60.48, at 1021 (14th ed. 1966).

13. The Uniform Commercial Code did not become effective in Maine until December 31, 1964. Me.P.L.1963, c. 362, § 41.

is substantially on all fours with the present one. In that case, Aetna became the surety on two performance and payment bonds covering the obligations of one Blenkhorn under construction contracts with the United States Government and with a private contractor. In consideration of Aetna's becoming surety on the bonds, Blenkhorn executed and delivered to Aetna bond applications and indemnity agreements which were identical with those furnished by Dole in the present case. Subsequently, Blenkhorn assigned the contract proceeds to the defendant bank, which collected moneys due under the contracts and applied them on Blenkhorn's indebtedness to the bank. Blenkhorn had defaulted on his contracts, and Aetna was required to pay his subcontractors and materialmen. The Maine court held that the Assignment of Accounts Receivable Act controlled the assignment of contracts such as the construction contracts before it; that by the express terms of the Act an assignment is valid and effective when made, even though no notice of the assignment has been given to the debtor; and that therefore the bank took the contract proceeds subject to the prior assignments to Aetna and was liable to Aetna therefor.

 As indicated, the indemnity agreement here involved is identical to those before the Maine court in the *Aetna* case. By this agreement Dole assigned to Aetna all sums due and to become due under the Berbusse contract upon Dole's failure to pay bills incurred on the work under any of the contracts bonded by Aetna. It has been stipulated that when the Chapter XI petition was filed, Dole had unpaid bills for labor and materials amounting to more than $36,000, so that the assignment had become operative according to its terms at the commencement of the Chapter XI proceeding. Under the Assignment of Accounts Receivable Act, as construed and applied by the Maine court in the *Aetna* case, Aetna therefore had at that time a valid, complete and fully perfected assignment of the proceeds of the Berbusse contract, and its assignment of the contract proceeds was one as to which "no bona fide purchaser * * * no creditor of any kind * * * and no other assignee or transferee" of Dole could acquire any superior right as against Aetna of which a trustee in bankruptcy could obtain the benefit under Section 70c of the Bankruptcy Act.

Dole's second contention is that, even if the foregoing analysis of the applicable law is correct, the assignment of the proceeds of the Berbusse contract was void from its inception because that contract contained a provision prohibiting the assignment of the contract or its proceeds without Berbusse's written consent.[14] On this issue also the Maine law seems crystal clear.

In Aetna Cas. and Sur. Co. v. Eastern Trust & Banking Co., supra, one of the issues presented to the Maine court was whether the assignment to Aetna of the proceeds of Blenkhorn's contract with the United States Government was invalid because it was not perfected under the Assignment of Claims Act, 31 U.S.C. § 203 (1964), which prohibits the assignment of Government contracts without the consent of the Government. In holding that the assignment was not rendered invalid as between Aetna and the defendant bank by reason of this statute, the court said:

> The United States may disregard an assignment not perfected under the statute, and so it may be said that the application-assignment was ineffective

---

14. The contract between Berbusse and Dole provided that

Neither this contract nor the monies to become due thereunder shall be assignable without the written consent of the Contractor, any assignment without such consent in writing shall be void and shall vest no right of ac-

tion in the assignee against the Contractor.

It is stipulated that Aetna never sought or obtained the written consent of Berbusse to the assignment of the contract proceeds prior to the Chapter XI proceeding.

or invalid against the United States. The assignment nevertheless retains its normal force and strength among the parties, other than the United States. McKenzie v. Irving Trust Co., 323 U.S. 365, 65 S.Ct. 405, 407, 89 L.Ed. 305; California Bank v. United States F. & G. Co., 9 Cir., 129 F.2d 751, 753; Martin v. National Surety Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822; Bank of Arizona v. National Surety Corporation, 9 Cir., 237 F.2d 90; United States Cas. Co. v. First Nat. Bank of Columbus, D.C. Ga., 157 F.Supp. 789; American Fidelity Co. v. Nat. City Bank of Evansville, 105 U.S.App.D.C. 312, 266 F.2d 910.

Id., 156 Me. at 96–97, 161 A.2d at 849. And see United Pac. Ins. Co. v. United States, 358 F.2d 966, 969–970 (Ct.Cl. 1966).

■■ While the Maine court has not ruled upon the effect of a contractual prohibition of assignment such as that contained in the Berbusse contract, the necessary implication of the court's opinion in the *Aetna* case is that it would follow the overwhelming weight of authority in other jurisdictions, which is to the effect that a non-assignability clause in a contract is for the protection of the obligor alone, and in no way affects the validity of an assignment as between the assignor and the assignee. Portuguese-

American Bank v. Welles, 242 U.S. 7, 37 S.Ct. 3, 61 L.Ed. 116 (1916); McLaughlin v. New England Tel. & Tel. Co., 345 Mass. 555, 560, 188 N.E.2d 552, 558 (1963); Johnston v. Landucci, 21 Cal. 2d 63, 68, 130 P.2d 405, 408, 148 A.L.R. 1355 (1942); 4 Corbin, Contracts, § 873 (1951); Restatement, Contracts, § 176 (1932).[15]

■■ Dole's third and final contention is that Aetna acquired no security interest in the proceeds of the Berbusse contract because Dole was permitted to retain dominion and control over the moneys due under the contract,[16] thereby rendering the purported assignment fraudulent under the doctrine of Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991 (1925), and void as against the debtor in possession under Section 70e (1) of the Bankruptcy Act. 11 U.S.C. § 110e (1) (1964).[17] It appears clear, however, that the much criticized rule of Benedict v. Ratner (see 4 Collier, Bankruptcy para. 70.77(2), at 1604 (14th ed. 1964) is not the law of Maine.[18]

In Benedict v. Ratner, supra, the Supreme Court held that, under the law of New York, an assignment by a mercantile corporation of its present and future accounts receivable as security for a loan, where the assignor retained the right to receive and use the proceeds as it might see fit, was fraudulent in law and void as to creditors, so that the

---

15. *Dole argues vigorously and at length that the Aetna case was wrongly decided. The short answer to this suggestion is that, in a diversity case, "the proper function of the * * * federal court is to ascertain what the state law is, not what it ought to be." Klaxon Co. v. Stentor Electrical Mfg. Co., supra, 313 U.S. at 497, 61 S.Ct. at 1022; Boston Cas. Co. v. Bath Iron Works Corp., 136 F.2d 31, 33 (1st Cir. 1943).*

16. *The stipulation recites that prior to the commencement of the Chapter XI proceeding Aetna never exercised any control over the moneys owed to Dole under its various contracts with the general contractors and the United States, nor did Dole's accounting records reflect the as-*

signments of the contract proceeds to Aetna.

17. *Section 70e(1) of the Bankruptcy Act renders void as against a trustee in bankruptcy any transfer by the bankrupt which, under any federal or state law, is fraudulent as against any creditor who has a provable claim under the Act.*

18. *In determining whether an assignment is fraudulent under the doctrine of Benedict v. Ratner, a federal court must look to the applicable state law. Benedict v. Ratner, supra; Manchester Nat. Bank v. Roche, 186 F.2d 827, 829 (1st Cir. 1951); Lee v. State Bank & Trust Co., 38 F.2d 45, 47 (2d Cir. 1930); 4 Collier, Bankruptcy para. 70.77(2), at 1605–06 (14th ed. 1964).*

assignment created no lien in the assignee which was good against the trustee in a supervening bankruptcy. Dole cites no Maine case, and the Court's research has disclosed no case, which would indicate that Benedict v. Ratner is the law of Maine.[19] In fact, precisely the same argument, on substantially identical facts, was urged upon the Maine court by the defendant bank in Aetna Cas. and Sur. Co. v. Eastern Trust and Banking Co., supra, Brief for Defendant, pp. 24–26. Had Benedict v. Ratner been the law of Maine, the Maine court necessarily would have determined that the assignment to Aetna in that case was fraudulent and void as against the defendant bank. The court, however, ignored the point, and by its silence it must be considered to have rejected the defendant's argument. The argument must also be rejected here.

For the foregoing reasons, the Court holds that Aetna had, by virtue of the assignment in its indemnity agreement with Dole, a security interest in the proceeds of the Berbusse contract as of the date of the filing of the Chapter XI petition and that its security interest was unaffected by the Chapter XI proceedings. It follows that Aetna is entitled to retain such portion of the $19,000 fund now in its possession as is required to reimburse it for any loss it has sustained by reason of its suretyship on the bonds furnished by it for Dole.

Judgment will be entered declaring the rights of the parties in accordance with this opinion, following the determination by the Court, after a further hearing, of the exact amount of Aetna's loss.

It is so ordered.

19. Wyman v. Brown, 50 Me. 139 (1863), cited by Dole, merely holds that in certain circumstances "the giving of an absolute deed as security for a debt" may be "prima facie evidence of fraud" because "it conceals from creditors the fact that the grantor has a remaining interest in the land, which may be attached." Id. at 146–147. It is apparent, however, that Wyman v. Brown rests upon a variation of the doctrine of ostensible ownership. In Benedict v. Ratner the

Supreme Court expressly rejected the doctrine of ostensible ownership as inapplicable to an assignment of intangibles, Benedict v. Ratner, supra, 268 U.S. at 362, 45 S.Ct. 566; Lee v. State Bank & Trust Co., supra, 38 F.2d at 47, and based its holding upon what Collier describes as "a conceptual repugnancy between the actualities of the transaction and the purported security interest transferred." 4 Collier, Bankruptcy para. 70.77(1), at 1579 (14th ed. 1964).